(Decided 2nd March, 1877.)

J. H. HENRY MAENNER *vs.* JAMES CARROLL of CHARLES, and others.

*Questions arising in an action for damages sustained by falling into an excavation for a street, on a private lot over which the public were in the habit of passing—Right of way— License by implication—Nuisance—Dedication—Province of Court and Jury—Pleadings—Rejected prayers.*

In an action of damages for a personal injury, it was alleged in one of the counts, that the defendants were owners of a certain open and unenclosed lot of ground, within the limits of the City of Baltimore, and that persons were in the habit of passing over the same; and that the defendants cut on such lot in a dangerous and exposed portion thereof, a deep excavation, and left the same in a dangerous condition, and liable to injure persons passing over the said lot; and that the plaintiff while passing over said lot on a certain night, being ignorant of the excavation, fell therein and was injured. On demurrer, it was HELD:

1st. That said count entirely fails to state a sufficient cause of action.

2nd. That the fact that persons were in the habit of passing over the lot gave the plaintiff no right to do so; and unless there was such right, there was no breach of duty on the part of the defendants in cutting and leaving open the excavation.

3rd. That a party has the right to use his land as he pleases, except as he may be restrained by duty to the public or to private individuals.

4th. That any individual who complains of the manner in which a defendant may have used his own land, should show with certainty and precision both the right of the plaintiff, and the duty of the defendant, and in what manner such right and duty have been violated.

5th. That having no right to be on the lot according to the facts alleged in the count, the injury which the plaintiff suffered by falling into the excavation must be attributed exclusively to his own fault.

In other counts of the declaration, after alleging that there was a *public high-way* across said lot, it was further alleged,—not that the defendants cut the excavation, and left it in a condition dangerous to persons passing along the highway,—but that they *permitted* others to do so. On demurrer to these counts, it was HELD :

1st. That said counts were defective in not stating definitely *how* the defendants "permitted" the act complained of.

2nd. That where there is want of certainty in the allegation of a pleading, the general rule is, that the sense of an averment is to be taken most strongly against the pleader.

3rd. That it did not follow, that because the defendants were the owners of the lot, they were liable for all the nuisances that may be created thereon, no matter by whom.

In another count it was alleged that the defendants were the owners of a certain lot of ground, over which for many years they had *permitted all persons* to cross and recross at pleasure, without hindrance or interruption; and that under and by virtue of this *permission, leave and license,* the public generally were in the habit of crossing and recrossing said lot at pleasure, and that the defendants, with the knowledge of this general user by the public, and without notice or warning, and without revoking the permission or license, cut a deep trench through said lot and across the usual road or pathway, on which persons were in the habit of crossing said lot, and left open and unguarded said trench or excavation, &c. On demurrer, it was HELD :

1st. That there was nothing here alleged to constitute a public nuisance.

2nd. That the allegation that the defendants permitted all persons to cross and recross the lot at pleasure, without let, hindrance or interruption, and that the public generally were in the habit of so crossing and recrossing the same, under and by virtue of said permission, leave and license, was not sufficient to show in the plaintiff a positive right, and without such right the action could not be maintained.

Maenner *vs.* Cârroll, *et al.*

3rd. That there was no doubt however of the general proposition, that an obstruction or excavation made on a party's own land, and lawfully made, may give rise to an action upon proof that such obstruction or excavation was concealed, and the plaintiff was invited or induced by the act or conduct of the defendant, to pass over or near such obstruction in ignorance of its existence, whereby injury resulted.

At the trial it was proved that a contractor for grading, curbing and paving streets, made the excavation in question, under a contract with the defendants, for making the excavations in Cole street, which crossed the premises of the defendants; but there was no evidence that any of the defendants ever exercised any control or supervision over the work, except as they were owners of the lot, and had contracted with a competent workman to grade the street, as laid out and defined on the city map, according to the gradient established by the municipal authorities. HELD:

1st. That the contracting for the work was a lawful act, and the making of the excavation, which was necessary in the execution of the work, was equally so; and in order to render the defendants liable, there must be shown a breach of duty by them to the plaintiff in respect to some right of his to pass and repass over the lot.

2nd. That the question of the existence of a public highway or thoroughfare, having been settled by the jury adversely to the plaintiff, even if it be conceded that people were in the habit of passing over the lot without hindrance or objection from the defendants, the presumption would be in the absence of authority for such user, that they were trespassers.

3rd. If, however, it could be concluded from the evidence, that there was an implied license to the plaintiff to pass and repass over the lot at pleasure, until such license was revoked by some positive act or declaration of the defendants, such license or permission conferred no such right upon the plaintiff as to enable him to sue the defendants for obstructing the way, unless there was some concealed trap or excavation made in the way, which the plaintiff could not have discovered by the use of ordinary and proper diligence while in the use of the license.

The jury are not the tribunal to determine what would constitute a legal dedication of a way to public use. They are competent to find the existence of facts to fulfil the definition of what would constitute such a dedication, but not to determine the definition itself.

The jury have nothing to do with rejected prayers, and counsel should not be allowed to refer to them for the purpose of influencing the conclusions of the jury in regard to the facts before them.

APPEAL from the Superior Court of Baltimore City.

The case is sufficiently stated in the opinion of the Court.

*First Exception.*—After the testimony had closed, the plaintiff offered the following thirteen prayers.

1. If the jury shall find from the evidence, that the defendants were, on the 14th day of May, 1875, and for a long time theretofore had been, the owners of the lot or tract of land mentioned in the — counts of the declaration in this cause, and shall further find that there was over and across said lot or parcel of land, a certain roadway leading from Ramsey and Fulton streets to Baltimore and Ohio Railroad, at a point at or near the Mount Clare station, or to the Washington road, which had been used by the public a period of more than twenty years prior to May 14th, 1874, under a claim of right to use the same, and that said user of said roadway had been generally peaceable, uninterrupted and adverse during the whole of said period, and shall further find that the defendants cut, or caused to be cut, over or across said roadway, a deep trench or excavation, and left the same in an unprotected and unguarded condition, without any warning or notice to the public of danger in passing over said roadway; and shall further find that the plaintiff, on the night of the 14th of May, 1874, while passing over said roadway and exercising ordinary care, fell into said trench or excavation and was injured thereby, then the plaintiff is entitled to recover in this action.

2. If the jury shall believe from the evidence, that the defendants were, on the 14th day of May, 1874, and for a long time theretofore had been, the owners of the lot or tract of land mentioned in the — count of the declaration in this cause. And shall further find that there was a roadway across said lot or parcel of ground, which had been used by the public generally for a long time, and that the defendants were aware of such user, acquiesced in the same, and that on

the line of said roadway there was a bridge over a depression in the same road, for the purpose of allowing foot passengers, persons on horseback and vehicles to pass over said depression, and that said roadway passed over a railroad track, and when it crossed said railroad track a space was left open between the cars, wide enough and for the purpose of allowing all persons and vehicles desiring to pass over the same, to cross said railroad track, and further that there was at said place of crossing said railroad track, (if they shall find there was such a place,) a notice put up, warning such persons to "Beware of Locomotives," and that a flagman was placed at such crossing, (if there was one,) to warn all such persons against danger in crossing said railroad track, then they are at liberty to find a dedication of the said roadway by the defendants as a public highway, and shall further find that the defendants cut, or caused to be cut, over said lot and across said roadway, a deep trench or excavation, dangerous and liable to injure persons desiring to pass and repass over said roadway. And shall find further that the plaintiff, on the night of the 14th of May, 1874, while passing over said roadway, without warning, or knowledge, or notice of said excavation, and without any guard or protection to keep persons passing as aforesaid over said roadway, from falling into the same, while in the exercise of due care, fell into said excavation and was injured thereby, then the plaintiff is entitled to recover in this action, even if they should find that said excavation was cut across said roadway by an independent contractor, provided they further find that said contractor so cut the same across said roadway, under a contract with the defendants, and that in so cutting it, he did no act in contravention of the terms of the said contract.

3. If the jury believe from the evidence, that the defendants were, on the 14th of May, 1874, and for a long time theretofore had been, the owners of the lot or parcel of

ground, mentioned in the different counts in the declaration in this cause, and shall find that there was over and across said lot a roadway, which had been in general use by the public for a long period of time, with the acquiescence of defendants, and that said roadway was the usual and only safe approach on the north side to the Western Schuetzen Park, a place of public entertainment, and shall further find that the defendants cut, or caused to be cut, on said lot and across said roadway, a deep excavation or trench, and left the same open and unenclosed, without warning or notice to the public of its dangerous character, and further that the plaintiff, on the night of the 14th of May, 1874, while passing over said roadway, and while ignorant of said excavation, and in the exercise of ordinary care, fell into said excavation or trench and was injured, then the plaintiff is entitled to recover in this action.

4. If the jury believe from the evidence, that the defendants were, on the 14th of May, 1874, the owners of the lot or parcel of ground mentioned in the different counts of the declaration in this cause, and that there was running across said lot, from the south end of Fulton street in Baltimore City, a roadway in general use by the public, and which had been in such general use for more than twenty years, leading up to a house which had been used for a long time as a place of public entertainment, and that said road was the regular and only safe approach to said house, for all persons coming from the direction of Fulton street, and shall further find that the defendants, or an independent contractor employed by them for that purpose, cut over said lot and across said roadway a deep trench or excavation, thereby rendering said roadway dangerous and impassable to those desiring to pass over the same, and shall further find that the plaintiff, while passing over said roadway, exercising ordinary care, and in returning from said house, to which he had been on

Maenner *vs.* Carroll, *et al.*

business, or as member of the club occupying said house, if they find he had been to said house on business, or as such member of a club occupying said house, when returning therefrom, without warning, notice or protection of any kind against accidents, fell into said excavation, and was injured thereby, then the plaintiff is entitled to recover in this cause.

5. If the jury believe the matters and things set forth in the first prayer, and shall further find that the excavation spoken of had been cut across the road or pathway in said prayer specified, for two or three weeks previously, and that the said excavation was dangerous, and likely to injure those persons desiring to pass and repass over the same, and that the defendant took no pains to guard or protect the same, so as to prevent injury to those likely to pass and repass over the same, and that the plaintiff while passing over said road, without warning or notice, and while using due care, fell into said excavation and was injured, then the plaintiff is entitled to recover, whether said excavation was made by an independent contractor, or by the defendants themselves.

6. If the jury shall believe from the evidence in the cause, that the defendants were, on the 14th day of May, 1874, and for a long time theretofore had been, the owners of the lot or parcel of ground mentioned in the — count of the declaration in this cause, and shall further find that there was a regular fixed roadway or path over and across said lot or parcel of ground, and that the said road had been dedicated to public use ; and if they shall further find that the defendants dug, or caused to be dug over said lot and across said highway, a deep trench or excavation, dangerous to persons passing over the same, and that the plaintiff, on the night of the 14th of May, 1874, while passing over said highway, without any notice or warning or guard to protect persons passing over the same, and while exercising ordinary care, fell into said trench or

excavation, and was injured, then the plaintiff is entitled to recover, regardless of the question of whether said roadway was across an inclosed lot or not.

7. If the jury believe from the evidence, that the defendants were the owners of the tract, or parcel of land mentioned in the ninth count of the declaration in this cause, and if they further believe that over and across the said lot or tract of land all persons desiring so to do were permitted, without hindrance from the defendants, or any of them, to pass and repass at pleasure, upon a certain pathway or road, and that all such persons were, for a long time, in the habit of passing and repassing with safety over the same, on foot, on horseback, or in vehicles of different kinds, with the acquiescence of the defendants, and shall further find that defendants, with notice of the fact that persons were likely to cross and recross the same, in and upon the path or road leading across the same, between Mount and Fulton streets, and without any effort to warn such persons of danger in so crossing, and without taking any measure to guard against accident to such persons so crossing and recrossing the same, did cut a deep trench or excavation over said parcel or tract of land, and across said pathway or road, rendering the crossing of said lot or parcel of land in the usual place or places of crossing the same, dangerous to persons likely to cross over said lot or parcel of ground, and likely to approach said trench or excavation, and shall further find that the defendants did not forbid persons from passing and repassing across said lot or parcel of ground ; and if they shall further find that the defendants were indifferent to the injuries which might happen to such persons passing and repassing over said lot or parcel of ground by reason of cutting such trench or excavation, and shall further find that the plaintiff, on the night of the 14th of May, 1874, without notice or knowledge that the said excavation or trench was cut across the pathway or road

usually travelled by persons passing from the corner of Fulton and Ramsey streets, over said lot to Baltimore and Ohio Railroad, and while exercising ordinary care in passing over the same, fell into said trench or excavation, and was injured thereby, then they may find for the plaintiff, notwithstanding that they may find that said lot or parcel of ground was unenclosed, and that there was more than one pathway or road across said lot, and their said finding shall not be affected by their finding that said trench or excavation was cut by an independent contractor, if they shall further find that said contractor was employed by the defendants to cut the same, and did only what he was employed to do by the said defendants.

8. If the jury shall find from the evidence, that the defendants, and those under whom they claim, owned the lot of ground mentioned in the ninth count of the case, and for twenty years prior to the 14th May, 1874, the said lot was unenclosed, and there were one or more road tracks and pathways for vehicles and foot passengers crossing the same, and converging at the Baltimore and Ohio Railroad track, in and upon which all persons so desiring had, during all that time, been in the habit of using and travelling, in going to and from the said railroad track, without any interference, let, hindrance or objection from the said defendants, or those under whom they claim, and by their acquiescence and permission, may be inferred from such long uninterrupted use in passing to and fro across the same, without any objection upon the part of the defendants, or those under whom they claim; and shall further find that the said license, if they shall find the same was not revoked by the defendants prior to said date, and no notice given to the public, and especially to the plaintiff, that the surface of the lot aforesaid, was about to be rendered impassable for vehicles and dangerous for foot passengers, by cutting a street through the same, and further

find that the defendants themselves, or by their servants and agents, cut a deep and wide trench across the point on the said lot crossed by said roads and paths, rendering the passage across the said lot impassable for vehicles, and dangerous to those who might pass over the same, without notice or knowledge thereof, and further find that defendants had good reason to expect that persons would cross the said lot at said points by said road and paths, and took no means to warn such persons of the danger caused by said cut, or to prevent such persons from being injured by the said change made in the surface of said lot, and shall further find that on the night of the 14th of May, 1874, when it was dark, the plaintiff, in ignorance of the fact that the said trench had been cut across the said roads and paths, and pursuing the ordinary way of crossing said lot under said license, and with ordinary care, did fall into said trench, and was thereby injured, then the jury may find for the plaintiff.

9. If the jury find from the evidence that the defendant permitted the plaintiff, in common with the public generally, to enter upon and pass over their lot of ground mentioned in the ninth count of the *narr.*, and in the evidence, for a long time before the year 1874, and to use such ways or tracks across the same as they might then find had been in use, and which they might desire to travel, in order to go to and from points on the north and south of the said lot, and never notified him or the public to desist from so travelling over the same, and the plaintiff and the public generally, in pursuance of such permission for many years prior to 1874, had been in the habit of crossing the said lot on foot, and with horses and vehicles, and driving cattle and hogs across the same, upon such roads or paths as they might then find had been used, running from Ramsey street towards and to the Baltimore and Ohio Railroad track and West Baltimore Schuetzen Park, if they shall find any such roads existed and had been in

use, and shall further find, that the defendants, without giving any notice of their intention to change the surface of said lot and render the travel across it in the said accustomed places, (if they find there were such accustomed places,) impracticable and dangerous, and with good reason to believe that persons who had been in the habit of crossing said lot as aforesaid, would be likely to continue to cross the same, unless warned of the danger of so doing, did cut a trench across the said lot and said accustomed road and paths, if they find any such roads and paths, —— feet wide, and from nine to ten feet deep, on such part and in such position upon said lot as to be visible to persons crossing the lot on said roads only when in very close proximity to the same, in consequence of the physical formation of the lot, and equally dangerous along the whole extent of the cut aforesaid, and placed no guard to protect such persons from falling into the same, or any lights to enable such persons on dark nights to observe the dangerous excavation and avoid it, and the plaintiff in crossing the said lot on his way from the said park to the Frederick road on business, upon the night of the 14th of May, 1874, whilst walking across the said lot on one of the crossing places usually used by those crossing the same, and exercising ordinary care and ignorant of the existence of the said trench, fell into the same and was injured, then their verdict may be for the plaintiff, though they find that the said lot was unenclosed, and that there is no other evidence of said permission of defendants to cross the said lot except passive acquiescence upon the part of the defendants.

10. If they shall find from the evidence, that plaintiff had a license from the defendants to cross the lot mentioned in the pleadings, and that defendants were owners thereof, and without revoking said license or giving any notice or warning to plaintiff, either actual or constructive, of their intention to cut a trench across the said lot, and

across the usual place of passing the same by the plaintiff under said license, and with good reason to believe that the plaintiff would pass as usual unless warned of the change that had been made in the surface of the lot, and without any guard to protect him and others from falling into the same, and the plaintiff whilst crossing said lot in pursuance of said license, and in the usual place for crossing, and whilst exercising ordinary care, fell into said excavation and was injured, then they may find for the plaintiff, though they find the lot was unenclosed, and that the defendants had the right to cut the trench across the said lot.

11. The fact that the excavation spoken of in all of the preceding prayers of the plaintiff, was cut by an independent contractor employed by the defendants, (if the jury find it was so cut,) cannot affect the plaintiff's right to recover in this action unless the jury find that said contractor in cutting the same, was not doing what he was employed by the defendants to do, but that said cutting was in violation of his contract.

12. In estimating the damages to which the plaintiff is entitled in this cause, the jury are at liberty to take into consideration all the circumstances of the case, the effect upon the plaintiff's business, his mental and bodily suffering, the permanent character of his injury, if they find that his business was affected by said accident, that he did suffer mental and bodily pain therefrom, and that his injury was of a permanent character.

13. If the jury believe that the defendants were guilty of wanton and reckless negligence in cutting the excavation mentioned in the preceding prayers, then in addition to the compensation for actual pecuniary loss, mental and bodily suffering, and the permanent character of the plaintiff's injury, they are at liberty to impose upon the defendants punitive or exemplary damages in their discretion.

And the defendants offered the eight following prayers:

1. That there is no sufficient evidence in the cause of negligence on the part of the defendants, to entitle the plaintiff to recover for the injuries complained of in the declaration.

2. That there is no sufficient evidence in the cause of a public highway across the lands of the defendants, as alleged in the plaintiff's declaration.

3. That the jury shall find from the evidence, that the plaintiff, by the exercise of ordinary care, might have avoided falling into the excavation in evidence, that then the plaintiff is not entitled to recover.

4. That if the jury shall find from the evidence, that the plaintiff received the injuries complained of in the declaration, by falling into an excavation; and shall further find that said excavation was made on the property of the defendants, and that there was no public highway or foot-path at the spot where said accident occurred or immediately contiguous thereto, that then the plaintiff is not entitled to recover.

5. That if the jury shall find that the plat testified to by Simon J. Martenet, correctly delineates the streets of Baltimore City, as laid out by Commissioners under the Act of Assembly of the State of Maryland, in the year 1817, chapter 148, section 12, as shown by Poppleton's Plat, and if they further find that Fulton street, as shown on said plat, was graded, paved and curbed to the building line of Cole street in 1854, and that Ramsey street, between Fulton and Mount streets, was graded, paved and curbed in 1857, and that the lot of ground bounded on the west by Fulton street, on the north by Ramsey street, on the east by Mount street, and extending south beyond Cole street, was, in 1873, and for a long time before, an open vacant common, owned by the defendants, and that the grade of Cole street had been established by the official authorities of Baltimore City, and that defendants, desiring to improve said property, made the contract with

Francis Hay, in evidence, dated 4th day of November, 1873 ; and if they further find that said Hay was a competent and skillful person, and that said Hay, under said contract, in November, 1873, ploughed up the entire surface of the bed of Cole street, between Mount and Fulton streets, and that said Hay proceeded to make the excavations necessary to grade said Cole street, according to the grade so established by the city authorities, and that in May, 1874, whilst said Hay was still performing said contract, the plaintiff, while crossing the said lot upon his own business, or for his own pleasure, fell into the excavation so made by said Hay, and was injured thereby, that then the defendants are not liable for said injuries.

6. That to constitute a public highway by prescription, it is necessary to show an adverse, continuous and exclusive use by the public for twenty years ; and even if the jury find that the public were in the habit of passing over the land of the defendants, in going from the Frederick road to the Washington road, yet if the jury believe this use was exercised by permission of the owners, or if the passage was interrupted by any obstruction incumbent with the use of it as a public highway within twenty years then such use by the public cannot make said road a public highway.

7. That there is no evidence in the case of any public highway across said land of the defendants by dedication.

8. That there is no evidence in the cause, that the defendants either directly or by implication, induced the plaintiff to enter upon or pass over their land, in said declaration described, and therefore the plaintiff is not entitled to recover under the ninth and tenth counts of the declaration.

The Court, (GAREY, J.,) granted the first, fifth, eleventh and twelfth prayers of the plaintiff, and the third, fourth, sixth, seventh and eighth prayers of the defendants, but refused to grant the second, third, fourth, sixth, seventh,

eighth, ninth, tenth, and thirteenth prayers of the plaintiff. The plaintiff excepted.

*Second Exception.*—Stated in the opinion of the Court.

The jury rendered a verdict for the defendant, and judgment was entered accordingly. The plaintiff appealed.

The cause was argued before BARTOL, C. J., BOWIE, BRENT, GRASON, MILLER and ALVEY, J.

*Henry C. Kennard* and *John H. Handy*, for the appellant.

An implied license may arise in various ways—as when a man opens a road to his dwelling, there is an implied license for persons to go by that road to his dwelling for any legitimate purpose; or in case of ways of necessity, when a man sells a piece of land, entirely surrounded by other land, there is an implied license to the purchaser to pass over this other land to get to his purchase; so, where there is a road-way in regular use by the public over a man's land, and such user is, and has, for a long time been uninterrupted, there is an implied license to the public to pass over it. 1 *Addison on Torts,* (*Wood's Ed.,*) *sec.* 229; 2 *Waterman on Trespass, pp.* 94–5–6, 182–3, (*sec.* 781–2,) *pp.* 207–8, and notes at bottom of last two pages; *Corby vs. Hill,* 4 *C. B.,* (*N. S.,*) 556; *Gallagher vs. Humphrey,* 10 *W. R.,* 664, (6 *Law T. R. N. S.,* 684;) *Shearman & Redfield on Neg., sec.* 498.

It is conceded that a licensor is not bound to keep a way in good repair for a licensee. But, it is equally clear, he has no right to render the way dangerous, without notice to the licensee. In this case the averment is distinct, that they did render the way very much more dangerous, whilst they neither revoked the license nor notified the licensee, nor took any precaution to avert the results of their act. The licensee is lulled into a fancied security, by the fact, that the license is not revoked.

Notice is necessary to an implied licensee. 2 *Waterman on Tres., p.* 183, *sec.* 781; *Shearman & Red. on Neg., sec.* 499.

And notice is necessary, even as against a trespasser. *Shearman & Red. on Neg.,* 43, *n.* 38, and cases cited; *Ibid, secs.* 499, 508, 509, 510; 1 *Waterman on Trespass, pp.* 90, 145, 146, *sec.* 166; 1 *Addison on Torts, (Wood's Edition,) sec.* 229; *Daley vs. Nor. R. R. Co.,* 26 *Conn.,* 591; *Birge vs. Gardiner,* 19 *Conn.,* 507; *Brown vs. Lynn,* 31 *Pa. St.,* 510; *Loomis vs. Terry,* 17 *Wend.,* 496; *Sawyer vs. Jackson,* 5 *N. Y. Leg. Obs.,* 380; *Bird vs. Holbrook,* 4 *Bingham,* 628, (15 *E. C. L.,* 91;) *Lynch vs. Nurdin,* 1 *Adolp. & Ellis, N. S.,* 29, (41 *E. C. L.,* 422;) *R. R. Co. vs. Stout,* 17 *Wallace,* 657; *Davies vs. Mann,* 10 *Mees. & Wels.,* 548; *State vs. Moore,* 31 *Conn.,* 479; *Robinson vs. Cone,* 22 *Vermt.,* 213; *Caswell vs. Worth,* 5 *E. & B.,* 85 (*E. C. L.,* 848.)

While it is decided that traps, spring-guns, and other dangerous instruments, may be lawfully placed on private grounds, for the purpose of deterring trespassers or catching strange animals doing damage, yet, one who uses such instruments, must give public notice of the fact, in such way, as to bring it to the knowledge of *every one* who uses reasonable care in approaching the land. And this applies with such force, that *it is decided unlawful to place them upon land not fenced in.* And in the *absence of proper notice,* the owner is liable even *to a trespasser.* And the same doctrine is equally applicable to dangerous excavations as to dangerous instruments, the true principle being that no man has a right recklessly to endanger human life. *Shearman & Redfield on Negligence, p.* 571, *sec.* 509.

A person who is the owner or occupant of real property, and quietly acquiesces in its use by others, while under no obligation to keep it fit for such use, is responsible for any injuries which may happen to those so using it, by reason

of any increased danger resulting from the acts of such owner or occupant. The same principle which makes the owner responsible for excavations too close to the public highway, applies to all cases where a party has good reason to believe that injury may happen to others from his acts, viz., that in all such cases·he must give notice or warning, must exercise proper precautions to prevent such injury. And if injury should happen from his neglect to give such notice or exercise such precautions, he is liable to the .party so injured, and it is no reply to an action by the injured party to say that he was a trespasser. *Shearman & Redfield on Neg.*, secs. 499–500-503 ; *Sweeny vs. Old Colony R. Cö.*, 10 *Allen*, 368 ; *Zoebisch vs. Tarbell*, 10 *Allen*, 385.

*J. Alexander Preston* and *R. J. Gittings*, for the defendants.

T.o charge the owner of waste or vacant land with an obligation to protect those who may think proper to pass over it against an excavation made under his authority, it is not enough to show that all persons having occasion to cross such waste land have been accustomed to go upon and across the same without interruption from the owners, and with their license and permission. *Hounsell vs. Smyth,* 7 *C. B., N. S.*, 731; *Gautrat vs. Egerton, L. R.*, 2 *C. P.*, 371; *Bolch vs. Smith,* 7 *H. & N.*, 736; *Smith vs. Loudon & St. Katharine Docks Co., L. R.*, 3 *C. P.*, 332, 333, 334 ; *Indermaur vs. Dames, L. R.*, 1 *C. P.*, 287, 288, *L. R.*, 2 *C. P.*, 312 ; *Stone vs. Jackson,* 32 *Eng. Law & Eq.*, 349 ; *Kohn vs. Lovett,* 44 *Ga.*, 251 ; *Howland vs. Vincent,* 10 *Met.*, 371 ; *Knight vs. Abert,* 6 *Penn. St.*, 472 ; *Hardcastle vs. So. Yorks Ry. Co.*, 4 *Hy. N.*, 67 ; *Whart. Negligence*, secs. 351, 824, *note.*

Such sufferance and tolerance, or even express permission of passage over vacant land, may preclude the owner from treating those who have availed of it as trespassers,

but raise no *duty* to guard them against the consequences of so availing of it, nor do they limit his right as owner to make any lawful use of his property.    Were the law otherwise, the owners of open lands never could be safe in using it.    The same man who in the dark walks into a pit excavated in its midst, might have sustained equal injury by stumbling against a farmer's harrow, or a, plough standing in the furrow.    To sustain an action like this, it is therefore necessary to go further, and show facts which made it legally obligatory upon the owner to fence off the excavation.

Here the excavation of the street-bed was not only lawful, but reasonably to be expected.    The condition of the property necessarily required that it should be done at some time, and it is not denied that the proper time had, in fact, arrived.

A duty to fence an excavation may arise from the fact that the excavation is immediately adjacent to a public highway, so as to make the ordinary use of the highway dangerous.    It may also arise from an invitation or allurement held out by the owner, as where he is a tradesman, mechanic or innkeeper, and the common access to his shop or inn, is over the route which the excavation, subsequently made, obstructs or renders insecure.    Under some circumstances, the holding out of a path even to a private dwelling, may impose an obligation upon the owner against those lawfully visiting him, and invited to take the path so visibly indicated and held out.    It is needless to say that no such special circumstances exist, or are alleged to exist here.    This is the simple case of a piece of land left open and unfenced in a city, and surrounded by paved streets, constituting the only proper highways of the city,

It is clear, therefore, that the third, fourth, fifth, sixth, seventh and eighth counts, which allege no legal duty which has been violated, do not set forth any cause of action, and the demurrers were properly sustained.

There was no evidence legally sufficient to show a public way by dedication along the course taken by the plaintiff.

The instructions given to the jury, as to the existence of a public highway at the place in question, were even more favorable to the plaintiff than he was entitled to. The Court might well have held that there was no evidence at all of such a highway as was claimed, but the question whether or not a public way did exist there, was left to the jury by the granting of the plaintiff's first prayer. *Day vs. Allender,* 22 *Md.,* 511; *Pue vs. Pue,* 4 *Md. Ch. Dec.,* 386; *Washburn on Easements,* 132, 188; *Robinson, et al. vs. Webb,* 11 *Bush,* (*Kentucky,*) 464, 479.

There was no error in the instructions regarding contributory negligence. It was negligence, under the circumstances, to cross the field at night, in the manner shown by the evidence.

The Court properly refused to permit a rejected prayer to be read to the jury.

The use the plaintiff's counsel sought to make of the fact of the rejection of the defendants' second prayer, was especially objectionable, as they wanted the jury to infer from it, that the Judge entertained an opinion upon the question of *fact,* which he had allowed to go to the jury, namely, whether or not a highway had been proved to exist, adverse to the defendants.

Although, owing to the manner in which the case was left to the jury, the question arising in consequence of the fact that the excavation was made by an independent contractor, has become immaterial, it may well be contended that, as the excavation of the street was made according to a grade established by the municipal authorities, and was a thing right and proper to be done, and not in itself injurious, no responsibility attached to the owners of the ground, for any want of proper precautions in doing it, even if the contractor could be held liable, under the circum-

stances of this case. *De Ford vs. The State,* 30 *Md.,* 179 ; *Ellis vs. Sheffield Gas Consumers' Co.,* 2 *El. & Bl.,* 767.

ALVEY, J., delivered the opinion of the Court.

The declaration in this case contains ten counts; and to the third, fourth, fifth, sixth, seventh and eighth, the defendants demurred ; and to the other counts there were pleas filed, and issues joined. The demurrers were sustained, and upon the trial of the issues of fact a verdict was rendered for the defendants. The plaintiff has appealed, and we are now called upon to review the rulings of the Court below.

The third count, the first demurred to, alleges that the defendants were owners of a certain open and unenclosed lot of ground within the limits of the City of Baltimore, and that persons were in the habit of passing over the same ; and that the defendants cut on such lot, in a dangerous and exposed portion thereof, a deep excavation, and left the same in a dangerous condition, and liable to injure persons passing over the said lot; and that the plaintiff, while passing over said lot, on a certain night, being ignorant of the excavation, fell therein and was injured.

This count entirely fails to state a sufficient cause of action. To constitute a good cause of action, in a case of this nature, there should be stated a right on the part of the plaintiff, a duty on the part of the defendants in respect to that right, and a breach of that duty by the defendants, whereby the plaintiff has suffered injury. Here there is nothing of the sort shown. All the facts alleged in this count may be true, and yet the plaintiff would have no right of action against the defendants. The fact that persons were in the habit of passing over the lot, gave to the plaintiff *no right to do so;* and unless there was such right there was no breach of duty on the part of the defendants in cutting and leaving open the

excavation.   A party has the right to use his land as he pleases, except as he may be restrained by duty to the public or to private individuals.   But any individual who complains of the manner in which a defendant may have used his own land, should show with certainty and precision both the right of the plaintiff and the duty of the defendant, and in what manner such right and duty have been violated.   This count, as has been perceived, contains no allegation that there was any public way over the lot to entitle the plaintiff to pass over it, nor is there any allegation that the plaintiff, by reason of authority from the defendants, was lawfully or rightfully passing over the lot at the time of the accident.   The only fact alleged to confer the right on the plaintiff is, that persons were in the habit of passing over the lot ; but that this was insufficient to establish a right in the plaintiff is too clear for question.   And having no right to be on the lot, according to the facts alleged in this count, the injury which the plaintiff suffered by falling into the excavation must be attributed exclusively to his own fault.   "If I place a log across a public path," says DALLAS, J., in *Dean vs. Clayton*, 7 *Taunt.*, 489 ; (2 *Eng. Com. Law*, 202,) "and injury be thereby sustained, the soil being my own, but the public, or individuals having a right of way over it, an action will lie, because there is a right in others to pass along without interruption ; but if there be no right of way, I may with any view, and for any purpose, place logs on my own land, and a party having no right to be there, and sustaining damage by his own trespass, cannot bring an action for the damage so sustained.   So, in the case put of a ditch, I may not dig it, so as to interfere with any public or private right, but within the limit of my own property adjoining a common, and not separated from it by any actual fence, I may dig a ditch however wide ; and man or beast sustaining harm, having no right to be there, no action will lie.   Such was the case cited of the horse

straying from the common, and falling into the pit, and in which it was determined that no action would lie, first, because the owner had a right to do what he pleased with his own land, and next, that the plaintiff could show no right for the horse to be there." This passage from the opinion of the learned Judge, delivered in the case referred to, has been often referred to and cited in subsequent cases, as containing a clear and correct statement of the law upon the subject of which it treats; and taking it to be correct, and applicable to this case, it would seem to follow, without further comment, that the ruling of the Court below in sustaining the demurrer to this third count was in all respects correct, and must, therefore, be affirmed. And as the sixth count is precisely the same in its averments as the third, except that the allegation in the sixth is, that the defendants *permitted* a deep excavation to be cut across said lot, which in the third allegation is, that the excavation was cut by the defendants themselves, it follows that the same principles which we have applied to the third count apply to the sixth also, and that the ruling of the Court in sustaining the demurrer thereto should likewise be affirmed.

As is stated in the plaintiff's brief, the fourth count differs from the third in alleging that there was a *public highway* across the lot, and that the defendants *permitted* a deep excavation to be cut over the lot and across this highway, and the plaintiff, while walking on the highway at night, fell into the excavation and was injured. And the fifth count differs from the fourth only in alleging that there was a *roadway in public general use* across said lot, instead of a public highway, as alleged in the fourth count. But, in considering the questions that arise on these counts, the difference mentioned may be treated as matter of form rather than substance, as by so doing the fifth count is taken in the most favorable sense to the plaintiff, which, under the well established rules for the construction of pleadings, is not allowed.

Now, it is certainly true, that every person who does or directs the doing of an act that will of necessity constitute or create a nuisance, is personally responsible for all the consequences resulting therefrom, whether such person be employer or contractor. *Wilson vs. Peto*, 6 *Moore*, 49. And where, as in this case, a person is sought to be made responsible for a nuisance, not simply on the ground of his being the owner of the ground on which the nuisance exists, but because he has ordered or directed the doing of an act in a public highway which has created a nuisance, it is necessary that the act be alleged either as having been done or caused to be done by the defendant himself, or by others under his direction and authority. *Addison on Torts*, 197.

Here, the allegation is, not that the defendants cut the excavation, and left it in a condition dangerous to persons passing along the highway, but that they *permitted* others to do so. How permitted? The sufficiency of this allegation turns upon the word "permitted." In what particular sense it was used by the pleader is altogether uncertain. It may be, for aught that appears on the face of these counts, that the defendants permitted the excavation by their mere silence and failure to interfere, or by not taking active measures to prohibit the making of the excavation over the lot and across the highway. Where there is want of certainty in the allegation of a pleading, the general rule is, that the sense of the averment is to be taken most strongly against the pleader; *Chit. Pl.*, 237, 238 ; and giving to the defendants the benefit of this rule, the counts under consideration fail to state a sufficient cause of action. Mere permission in the sense suggested, would not be sufficient to render the defendants liable, without something more. It does not follow that because the defendants are the owners of the lot that they are liable for all the nuisances that may be created thereon, no matter by whom. This is illustrated in the case of land-

lord and tenant. If a landlord demise premises which are not in themselves a nuisance, but may or may not become such, according to the manner in which they are used by the tenant, the landlord will not be liable for a nuisance created on the premises by the tenant. He is not responsible for enabling the tenant to commit a nuisance, if the latter should think proper to do so. *Owings vs. Jones*, 9 *Md.*, 108; *Rich vs. Basterfield*, 4 *C. B.*, 805, (56 *E. C. L.*, 782.) In such case, it may be said, in one sense, that the landlord permitted the tenant to create the nuisance, but not in such sense as to render him liable. We think there can be no doubt of the correctness of the ruling of the Court below, in sustaining the demurrer to these counts.

By the seventh count, also demurred to, it is alleged that the defendants were the owners of a certain lot of ground, over which, for many years, they had *permitted all persons* to cross and recross at pleasure, without hindrance or interruption; and that under and by virtue of this *permission, leave and license*, the public generally were in the habit of crossing and recrossing said lot at pleasure; and that the defendants, with knowledge of this general user by the public, and without notice or warning, and without revoking the permission or license, cut a deep trench through said lot, and across the usual road or pathway on which persons were in the habit of crossing said lot, and left open and unguarded said trench or excavation; and that the plaintiff, without knowledge of the existence of the excavation, while crossing the lot on the usual road at night, fell into the excavation and was injured.

It is clear, there is nothing here alleged to constitute a public nuisance; and the only question is, whether the allegation that the defendants permitted all persons to cross and recross the lot at pleasure, without let, hindrance or interruption, and that the public generally were in the habit of so crossing and recrossing the same, under and by

virtue of said permission, leave and license, is sufficient to show in the plaintiff a positive right, such as is required to sustain this action? To determine this question in favor of the plaintiff would require a construction more liberal than the terms of the allegation will fairly warrant. There is no positive right alleged; and without such right the action cannot be maintained.

In the case of *Hounsell vs. Smyth,* 7 *C. B.,* (*N. S.,*) 731, the declaration stated that the defendants were seized of certain waste land, upon which there was a quarry worked by certain persons subject to the payment of certain royalties to the defendants; that this waste land was open to the public, *"and that all persons having occasion to pass over the waste land had been used and accustomed to go upon and across the same without interruption or hindrance from, and with the license and permission of, the owners of the waste land;"* that the quarry was dangerous to those who might have occasion to cross over the waste, etc., and that the defendants, knowing the premises, negligently and contrary to their duty, left the quarry unfenced and unguarded, and took no care and used no means for guarding or protecting persons passing over the waste land from falling into the quarry; and that the plaintiff, while crossing the waste, not being aware of the existence of the quarry, and being unable to see it by reason of the darkness of the night, fell therein and broke his leg. Upon demurrer to this declaration, it was held, that there was no cause of action disclosed; and the Court, in its judgment, said: "No right is alleged. It is merely stated that the owners allowed all persons who chose to do so, for recreation or for business, to go upon the waste without complaint;—that they were not churlish enough to interfere with any person who went there. One who thus uses the waste has no right to complain of an excavation he finds there. He must take the permission with its concomitant conditions, and, it may be, perils." If that

case was well decided it would seem to be quite decisive of the present question ; and that it was well decided we have no doubt. It has been sanctioned and followed in several subsequent cases, after full consideration. *Binks vs. South York and River Dun Co.*, 3 *B. & S.*, 244 ; *Bolch vs. Smith*, 7 *H. & N.*, 736 ; *Gautrel vs. Egerton, L. R.*, 2 *C. P.*, 371. In the last case cited the question was also raised upon demurrer as it is in the case before us ; and there the declaration stated that the defendants were possessed of land with a canal through it, and a bridge over the canal ; which land and bridge were used *with the consent and permission* of the defendants by persons passing to and from certain docks ; that the bridge was wrongfully and improperly kept by the defendants, and that one G., while lawfully passing over the bridge, fell and was drowned, by reason of the unsafe condition of the bridge. It was held that there was no cause of action disclosed under the statute giving a remedy for the death of a person caused by the wrongful act, neglect, or default of another.

There is no doubt, however, of the general proposition, that an obstruction or excavation made on a party's own land, and lawfully made, may give rise to an action, upon proof that such obstruction or excavation was concealed, and the plaintiff was invited or induced by the act or conduct of the defendant to pass over or near such obstruction, in ignorance of its existence, whereby injury resulted. In such case the plaintiff would have a right to rely upon the good faith of the defendant. And to this effect are several of the authorities relied on by the plaintiff's counsel in this case ; but there is nothing shown on the face of the count under consideration to justify the conclusion that the plaintiff was in any manner invited or induced, by any act of the defendants, to pass over the lot where the accident occurred.

It follows, from what we have said, that the Court below committed no error in sustaining the demurrer to

the seventh count of the declaration ; and as the eighth count is the same as the seventh, except that it alleges that the defendants *permitted* the excavation to be made and and kept open by others, instead of by themselves, as in the seventh count, it follows from what has been said in reference to the fourth and fifth counts as well as the seventh, that the demurrer to the eighth count was properly sustained by the Court below.

And having disposed of the questions raised on the pleadings, we have now to consider the questions raised by the prayers which were ruled upon by the Court below, and embraced by the bill of exceptions taken by the plaintiff.

The question as to whether there was a public road or thoroughfare through or over the lot was fully submitted to the jury by the Court in granting the first and fifth prayers of the plaintiff ; and as that question has been negatived by the finding of the jury, there should be no longer any contention in regard to that fact. It may, therefore, be assumed and taken as an ascertained fact that there was no such road or thoroughfare as that put to the jury to find in the prayers referred to.

Upon careful examination of the case, we think the plaintiff obtained all the instruction to which he was entitled in the granting of his first, fifth, eleventh and twelfth prayers ; and indeed, it may be questioned, whether he was not allowed to occupy a more favorable position before the jury than he was entitled to occupy, in view of the evidence of the case, and especially that produced by himself.

He proved by Hay, the contractor for grading Cole street, that he, Hay, was engaged in the business of grading, curbing and paving streets ; and that he graded Cole street from the west building line of Mount street to the east line of Fulton street, under an agreement with James Carroll, acting for himself and the other heirs of Charles

R. Carroll, several of whom, it is admitted, are infants. By the agreement, produced in evidence, Hay covenanted to do all the excavation in Cole street between the points just mentioned, and to complete such excavation within seven months. The plaintiff further proved by witness Hay, that in digging and excavating the bed of Cole street, the witness acted under the written contract produced ; that Cole street ran through the lot, and that the grade of the street had been established by the city authorities, and that the witness made the excavation to conform to such grade, which he received from the authorities of the city. The witness further proved that he commenced excavating the bed of the street in November, 1873, soon after the date of the contract, and finished the excavation and curbing in November, 1874. And after offering evidence tending to show that there was a roadway running over and across the lot, from the corner of Fulton and Ramsay streets, in a southerly direction, to and across the Baltimore and Ohio Railroad, near the Mount Clare Station, to the West Baltimore Schuetzen Park, and as to the manner in which such way was used, the plaintiff then offered evidence to prove that the bed of Cole street crossed said roadway, and in excavating Cole street the contractor Hay cut over the lot, and across this roadway, a deep excavation, 12 or 14 feet deep, and about 40 feet wide ; and that no notice or warning of the intention to make such excavation was given, nor any guard erected to prevent people from falling therein, and that such excavation was in this condition about two or three weeks before the accident occurred.

The defendants gave evidence to disprove the existence of any established roadway over the lot; and proved by Hay, the contractor, that shortly after he made the contract for grading Cole street, he ploughed up the entire surface of the street bed, between Mount and Fulton streets, and that this ploughed surface was visible to everybody down

to the time of the accident, and indicated the place and extent of the proposed excavation ; that he commenced excavating at Mount street, and worked regularly along toward Fulton street, using ordinary care; that the work had been going on continuously from November 1873 to to May 1874, the time of the accident ; and that Hay was still at work when the accident happened. It was also proved that the lot was part of an open common, and that people crossed it as they crossed any other common in the suburbs of the city, where they pleased and when they pleased ; that there were paths and road tracks in different directions across the lot, some better defined than others, but none to be called regular roads. Cole street is one of the streets regularly delineated on Poppleton's Plat, the regular map of the city, made by authority, over fifty years ago.

There was no evidence whatever that any of the defendants ever exercised any control or supervision over the work, except as they were owners of the lot and had contracted with a competent workman to grade the street as laid out and defined on the city map, according to the gradient established by the municipal authorities. The contracting for the work was certainly a lawful act, and the making of the excavation, which was necessary in the execution of the work, was equally so ; and in order to render the defendants liable there must be shown a breach of duty by them to the plaintiff, in respect to some right of his to pass and repass over the lot.

The question of the existence of a public highway or thoroughfare having been settled by the verdict of the jury adversely to the plaintiff, he now attempts to maintain a right to pass over the lot by what is called an implied or constructive license from the defendants. It was not proved, nor is it contended, that there was ever any express license or consent given either to the plaintiff or to the public generally to pass and repass over the lot; but

it is said that because the lot was an open common, and every person was allowed to pass over it who desired to do so, and that people were in the habit of so passing, without hindrance or objection from the defendants, therefore, by legal construction, a license is to be implied to the plaintiff to pass and repass at pleasure, until such license was revoked by some positive act or declaration of the defendants. But we think this conclusion is not warranted by the facts relied on by the plaintiff; for if it be conceded that people did so use the lot, in the absence of authority for such user, the presumption would be that they were trespassers, unless the user was of a character and duration to be evidence of a right of way in the public by prescription,—a proposition no longer involved in this case. If, however, it could be concluded from the evidence that there was such license or permission as contended for by the plaintiff, it is shown by the authorities already cited, that such license or permission conferred no such right upon the plaintiff as to entitle him to sue the defendants for obstructing the way, unless there was some concealed trap or excavation made in the way, which the plaintiff could not have discovered by the use of ordinary and proper diligence while in the use of the license. Here the excavation across the supposed way over the lot was open to the view of every one, and had been open for two or three weeks before the accident occurred, and was made in opening and grading one of the public streets of the city, the work on which had been in regular progress to that point for six months previous. It is true, says MARTIN, B., in *Bolch vs. Smith,* 7 *H. & N.,* 745, (a case before referred to,) "the plaintiff had permission to use the path. Permission involves leave and license, but it gives no *right.* If I avail myself of permission to cross a man's land, I do so by virtue of a license, not a right. It is an abuse of language to call it a right : it is an excuse or license, so that the party cannot be treated as a tres-

passer. Inasmuch as there was another way by which the plaintiff might have gone, but voluntarily chose the one which was out of order, I think he has no right of action against the defendant, and that he ought to have been nonsuited at the trial." This was said, not in reference to a matter of pleading, but upon the evidence, as in the present case ; and it was but the adoption (which was done in express terms) of the principle of the previous case of *Hounsell vs. Smyth*, 7 *C. B.*, (*N. S.*,) 731, to which we have before referred. These cases announce no new principle, but were decided in accordance with the maxims and well established principles of the common law ; and they are quite distinguishable from that class of cases to which *Corby vs. Hill*, 4 *C. B.*, (*N. S.*,) 556, belongs. In that case, the action was brought by the plaintiff for damages sustained while passing over a road leading from the main or turnpike road to an asylum and the residence of the superintendent adjoining thereto. It was there alleged and shown that the plaintiff, having lawful occasion to be on the road, was on it by the leave and license of the owners thereof, and that the defendant negligently obstructed the way by placing thereon certain building materials without giving notice or warning of the obstruction, and that, by reason thereof, the plaintiff's horse was driven against the obstruction, and injured ; and it was held that the plaintiff was entitled to recover. But the right to maintain the action was put upon the distinct ground, as stated by COCKBURN, C. J., that the proprietors of the soil had held out an allurement whereby the plaintiff was induced to pass over the road thus obstructed ; "they held out the road to all persons having occasion to proceed to the asylum as the means of access thereto ;" and as the owners of the soil could not justify, it was held that the defendant, acting under their license in placing the obstruction on the road, could not, and was therefore liable.

But, upon the assumption that there was a license or permission to the plaintiff to pass over the lot, it is contended that notice or warning should have been given of the existence of the excavation, according to the principle of the case of *Corby vs. Hill*, and that the defendants committed a breach of duty in their omission to give such notice or warning. To this, however, it may be answered, that, even conceding the license or permission to pass as claimed by the plaintiff, and that warning of the obstruction in the way should have been given, yet we think very ample warning was given, under the circumstances of the case, in the progress and condition of the work itself. All the plaintiff's prayers, except the three last, concluded to his right to recover upon the facts therein enumerated, and these prayers, thus concluding, were, in effect, concessions of the truth of all such parts of the defendant's evidence as had been offered for the purpose of qualifying or avoiding the supposed right upon the plaintiff's action was founded ; and if such evidence was sufficient to qualify or avoid the right asserted by the prayers, such prayers were properly rejected. Now, the uncontradicted evidence in regard to the condition and progress of the work is, that the contractor Hay, soon after his contract in November, 1873, ploughed up the entire surface of the proposed street bed, and that this ploughed surface was visible to every one down to the time of the accident in May, 1874 ; and that the work had been in a regular state of progression, and at the place where the accident occurred the excavation had been open and visible to every person passing in that direction for two or three weeks before the plaintiff was injured.

The principles we have stated fully cover all the facts of this case ; and we think the Court below was entirely right in rejecting the second prayer of the plaintiff, and in granting the seventh prayer of the defendants, to the effect that there was no sufficient evidence in the cause of the exist-

ence of any public highway over the lot by *dedication.* And the Court was correct in rejecting the sixth prayer of the plaintiff, not only for the reason just stated, but because that prayer failed to define what would constitute a legal dedication of a way to public use.   The jury were not the tribunal to determine that question.   They were competent to find the existence of facts to fulfil the definition, but not to determine the definition itself.

The third prayer of the plaintiff was properly rejected, upon the ground that the mere implied or constructive license sought to be deduced from the facts therein stated, gave the plaintiff no right, and imposed no obligation upon the defendants, according to the principles heretofore stated. And the fourth prayer would seem to present substantially the same question as the first, and is therefore immaterial, inasmuch as the first was granted ; and the seventh, eighth and ninth prayers were also properly rejected upon the same principle that the third was rejected ; and the tenth was rejected for reasons apparent upon the face of the prayer itself, and because in conflict with the principles herein expressed.

The third prayer on the part of the defendants, which was granted, we do not understand to be controverted by the plaintiff; and we think the other prayers of the defendants which were granted were all free from objection, upon the principles we have stated in reference to the propositions made by the plaintiff.   And it follows, therefore, that there was no error committed by the Court below, in its rulings upon the prayers of the respective parties.

While the case was being argued before the jury, one of the plaintiff's counsel in support of his argument that there was evidence to establish the existence of a public highway over the lot, proposed to read to the jury a rejected prayer offered by the defendants, to the effect that there was no sufficient evidence in the cause of such high-

way.   To this the counsel of the defendants objected, and the Court sustained the objection, and we think most properly.   The jury have nothing to do with rejected prayers, and counsel should not be allowed to refer to them, for the purpose of influencing the conclusions of the jury in regard to the facts before them.   Such a practice would be exceedingly pernicious in its consequences, and it has never been allowed.

Finding no error in any of the rulings of the Court below, we shall affirm its judgment.

*Judgment affirmed.*

(Decided 2nd March, 1877.)