WILLIAM F. DEAKINS, and MARIA L. DEAKINS *vs.*
ABRAHAM REX.

*Construction of secs. 1 and 2, of Art. 83, of the Code, relating to
the sale of Equitable estates under Execution—Habere facias
possessionem—Sales under a fi. fa.— Void and Voidable Exe-
cution—Sheriff's return.*

Under secs. 1 and 2, of Art. 83 of the Code, relating to the seizure
and sale of equitable estates under execution, and the rights of
purchasers at such sales, if the equitable title be one which includes
possession of the property, there can be no doubt that the writ of
*habere facias possessionem* is applicable to give the purchaser pos-
session.

Where the land sold under the execution had been mortgaged by
the judgment debtor, who had not been dispossessed under the
mortgage, but was possessed of the land, the writ of *habere* could
properly go to put the purchaser in possession, provided the judg-
ment was valid and the sale regular.

The averments relied on as constituting " good cause " why a writ of
*habere facias possessionem* should not issue, must be sustained by
evidence.

The pendency of ejectment suits in the Circuit Court of the United
States for the same land, furnishes no ground for denying the writ,
even if there were sufficient evidence of the pendency of such suits
(between the same parties) for the trial of the title to the land in
question.

The purchaser under the execution takes subject to any right of pos-
session or title which antedates the judgment upon which the exe-
cution issued, and which could be enforced against the judgment
debtor at the time the judgment was entered.

Right to immediate and present possession is all that is settled by the
*habere* proceedings, which right may be subject to overthrow by
ejectment.

Where a judgment *in rem* upon an attachment is described in the exe-
cution issued upon it as a judgment *in personam,* and the same error

38                    v. 60.

Deakins *vs.* Rex.

was committed in the *venditioni exponas*, the writ of execution is void, and not voidable merely, and cannot be amended, as it might have been if voidable only.

It is only when the Court can see by inspection of the judgment and execution, and by such facts concerning them as would be admissible, that execution was properly issuable, that it, and a sale under it can be supported.

The doctrine that where property is sold on several executions, and only one is valid, the purchaser will take title, may be subject to some qualification in the interest of a purchaser who is a stranger to the whole proceedings.

If the irregularity rendering the execution void be in the execution on the judgment first entitled to payment, then the sale sometimes will not be supported, because though on a valid execution, it is on a junior lien.

But conceding this distinction good, and proper to be observed in certain cases, there is no occasion to enforce it in a case where although the void execution was upon the older judgment, that judgment was in favor of the purchaser himself, and he asks that the sale be sustained. In such case no harm can result from granting him the relief, he asks; the superior lien being his own.

Certain land was seized and scheduled under an attachment by way of execution, and a judgment of condemnation was rendered against it. A *fi. fa.* was issued on this judgment directing the sale of the specific land affected by the judgment. The sheriff's return to the writ was "property on hand and unsold." HELD :

That this return was sufficient to sustain the *vendi.* subsequently ordered; as by the "property on hand" was evidently meant the property mentioned in the *fi. fa.* as already seized and condemned; and when the return says the property was "unsold," proper intendment in support of the process, and the presumption that the officer did his duty, supply the reason that it was for want of buyers.

APPEAL from the Circuit Court for Garrett County.

The case is stated in the opinion of the Court.

Deakins *vs.* Rex.

The cause was argued for the appellee before MILLER, YELLOTT, IRVING, and RITCHIE, J., and submitted on brief for the appellants.

*John W. Veitch*, and *W. P. Townshend*, for the appellants.

*John T. Mason R.*, for the appellee.

IRVING, J., delivered the opinion of the Court.

The appellee filed his petition, in the Circuit Court for Garrett County, for the writ of *habere facias* to put him in possession of certain land alleged to have been bought by him at sheriff's sale. No question arises on the proceedings for the writ. They are conceded to be regular. The defence interposed rests on a claim of paramount title and alleged irregularities in the executions and proceedings under them, through which the appellee purchased.

Maria L. Deakins, in her separate answer, only claims title to eight acres of the property sold to the petitioner; and her superior right being conceded, so much of the land was excluded in the order for the writ and is not now involved. William F. Deakins, in his answer, rests his right of possession, as against the writ and the petitioner,— First, on a demise of the land to him from one Virginia Pendleton. Secondly, because of irregularity in the writs of *fieri facias*, and proceedings under them, culminating in the appellee's purchase at the sheriff's sale. Thirdly, because of the pendency of certain ejectment suits in the Circuit Court of the United States for the District of Maryland, for the same land. And lastly, on the general ground, that petitioner has no title, which includes the contention that only an equitable title was sold at best, which this possessory writ cannot give possession of.

Reversing the order of objections we will begin with the last. Article 83 of the Code, section one, authorizes

the seizure of equitable estates and their sale under execution; and the second section of that Article, gives the purchaser all the rights of the person whose title is sold. If the equitable title be one which includes possession of the property, there can be no doubt that the writ of *habere* is applicable to give the purchaser possession. *Miller vs. Allison,* 8 *Gill & J.,* 38, and *McMechen vs. Marman,* 8 *Gill & J.,* 74. If therefore Philip Pendleton, the judgment debtor, had not been dispossessed under the mortgage to his father, and was possessed of the land, the writ of *habere* could probably go to put the purchaser, under an execution against him, in possession; provided the judgment was valid and the sale regular. In this connection we should consider the first objection to the writ's issuance, viz., that respondents claim under demise from Virginia Pendleton. When the appellants so claim, it is evident, that they mean to say, that they claim title by virtue of the mortgage from Philip Pendleton to his father, Philip C. Pendleton, dated August 28th, 1854. By the recitals of a deed of release, dated 7th Dec. 1877, they seek to show, that the mortgaged debt was bequeathed, by Philip C. Pendleton's will, to Philip Pendleton and his family during the life of Philip, and after his death to his children, and the survivors of them; and that Philip Pendleton and his children conveyed all their interest to Virginia Pendleton. It is not necessary for us to consider, and decide, in this case, whether the will of Philip C. Pendleton had the effect to release the mortgage debt; or whether the mortgage debt is to be presumed paid from long lapse of time, as was insisted by counsel at the hearing. The proper parties are not before us for the decision of those questions. Without entry on the property, by the mortgagee or his assignee, for default; or the expulsion of the mortgagor by ejectment, or suit to foreclose, Philip Pendleton's possession was undisturbed; and his right to possession remained till superior right was

asserted. Default by mortgagor would have given the mortgagee or his assignee the right to oust the mortgagor; but there is no evidence of such entry into possesion, or proceedings for foreclosure having been taken. There is no evidence to sustain the respondents' defence that they are in possession by demise from Virginia Pendleton. If there was, we might be justified in inferring, that, as Virginia Pendleton had the right under the mortgage, after default, to possession, she had obtained it; and respondents rightfully held under her by title paramount to the appellee. But we have no such proof, and are not warranted in making the necessary presumptions in support of respondents' possession and contention, except as to the eight acres, of which they are in possession by conceded and superior title.

The appellants being in possession of eight acres of the land rightfully, to that extent the application for the *habere* has been abandoned; and their possession must be referred to their *title*, and restricted to its limits according to their evidence. This Court said, in *Shaefer vs. Amicable Permanent Land & Loan Co.*, that "good cause, in the sense of the statute, implied not only averments, but evidence to sustain them constituting good cause to the contrary." 53 *Md.*, 89. This evidence we have shown is wanting.

With respect to the alleged pendency of ejectment suits in the Circuit Court of the United States for the same land, we need only say, that we can see no possible ground for denying the writ of *habere*, even if there were sufficient evidence of the pendency of such suits, (between the same parties,) for the trial of the title to the land in question. The only suit, of which there is evidence, is not between the same parties. This proceeding is simply an application to the Court to enforce the purchaser's right of possession, under his purchase from the sheriff, at the sale made under the execution on the judgment which

was a lien on the land. The purchaser takes subject to any right of possession, or title which antedates that judgment, and which could be enforced against Philip Pendleton at the time the judgment was entered. Right to immediate and present possession is all that is now settled. That right may be subject to overthrow by ejectment. The pendency of ejectment suits therefore, in another jurisdiction, cannot operate as an injunction upon the Circuit Court of Garrett County to prevent it from giving effect to a judicial sale made under valid process returnable to that Court.

This brings us to consider whether that process was regular and valid.

The appellee admits there were irregularities in the proceedings on the Rex judgment, but insists they were not such as rendered the same void. The only judgment which was ever rendered in favor of *Rex vs. Pendleton*, was one of condemnation, of the land now in question, for the payment of the sum sued for. There never was any personal judgment against Pendleton. The execution which was issued, and was, no doubt, intended to be an execution upon the judgment of condemnation, instead of reciting the judgment of condemnation, recited a judgment *in personam* of same date and for same amount as the judgment of condemnation. That *fieri facias* was returned "levied and on hand for the want of buyers." A *venditioni exponas* followed, in which the same error was repeated, in respect to the recitals, and the additional error was committed of issuing the *venditioni exponas* to the sheriff of the county for the time being, instead of to the ex-sheriff who had made the levy under the *fi. fa.*, and returned it unsold for want of buyers. At common law the *vendi.* always issued to the sheriff who had the *fieri facias* whether he had gone out of office or not; and the case of *Purl's Lessee vs. Duvall,* 5 *H. & J.,* 69, recognizes this as the practice and law of this State. By section 30,

of Art. 88 of the Code, where "any sheriff shall have taken property in execution, and shall fail to make sale thereof for five years, or shall be in insolvent circumstances," the *vendi.* may issue to the existing sheriff. It is contended by appellants' counsel that this section may be regarded as supplying an answer to the objection. It is not necessary for us to decide whether the contingencies mentioned in this section can be inferred as existing, from the proof in the cause, to make the *vendi.* regular as to the officer to whom it was issued; for, if that were so, the defect in the recitals of the *vendi.* and the original execution remains to invalidate them. Both *fieri facias* and *venditioni* set out a judgment that never was rendered; a judgment of very different character, incidents and operation, from the judgment of condemnation upon which, no doubt it was the purpose of the clerk to issue the executions. By no legitimate method, however, can the real judgment and these executions be connected. An execution on the judgment in attachment would direct the seizure and sale of the identical land attached and condemned by the judgment. The form of the writ in the two cases, is essentially different. The clerk had no authority for issuing the *fi. fa.* which was issued; and the writ was void, and not voidable only. It would have been amendable if it had been voidable only; but that defect could not have been cured by amendment. The case does not fall within the principle of the cases cited. They are cases where the judgments were partially recited, but not with entire accuracy; where the misrecital was such that it could be cured by amendment, being a mere clerical misprision. Here that is not the case. The execution which did issue could not issue; for there was no personal judgment to support such an execution. A description of the judgment is inserted in the execution, not only that the officer may know what he is to enforce, but also, that, by inspection, the writ may be connected with the authority for issuing

it. *Freeman on Execution, sec.* 43. A purchaser, in sup-
porting his title, would have to show a judgment author-
izing the execution to issue ; and it is only when the Court
can see by inspection of the judgment and execution, and
by such facts concerning them as would be admissible,.
that execution was properly issuable, that it and a sale
under it can be supported. Slight variations have some-
times been disregarded, as has been seen in the cases.
cited ; but the execution and *vendi.* following it had no
foundation, and if the sale had been made solely on their
authority, the purchaser would not be entitled to the writ
of *habere.* The appellee's title, however, does not rest upon
the sale under that writ alone. He purchased also under
a sale made by another sheriff, under an execution against
*Philip Pendleton ats. Thomas Rowland, Adm'r of William*
*Wright.* Rowland's judgment and executions were all
regular, and the sheriff executing the writ was the proper
officer to make the sale. Each officer advertised the prop-
erty for sale under the writ in his hands, to take place at
the same time and place. Jamison, the sheriff holding
Rowland's execution, advertised fully under his signature
as officer, giving his authority, the hour and date of sale,.
the place of it, and description of the property. Beneath
his advertisement was the advertisement of Coddington,
holding the execution we have declared void. His notice
simply stated his authority and that at the same time and
place he would sell the property "above described" to
satisfy the writ he described. They seem to have sold
conjointly for they make a joint special return separately
reciting the authority of each, and certifying the sale.
This return is subscribed by each. The point made is,
that this sale, so made, was void by reason of the partici-
pation in it by sheriff Coddington, who had no legal
authority for it.

    We do not see how, upon reason or authority this objec-
tion can avail the appellants. It is laid down in *Herman*

*on Executions,* page 424, that where property is sold on several executions, and only one is valid that the purchaser will take title. The case of *Banks vs. Evans,* 10 *Smedes & Marshall,* 35, and the case of *Herrick vs. Groves,* 16 *Wisconsin,* 167, fully sustain this doctrine. It may be, however, subject to some qualification in the interest of a purchaser who is a stranger to the whole proceedings. If the irregularity rendering the execution void be in the execution on the judgment first entitled to payment, then the sale, sometimes, will not be supported, because, though on a valid execution, it is on a junior lien. *Brown vs. McKay,* 16 *Indiana,* 484. But in this case, conceding the distinction good, and proper to be observed in certain cases, there is no occasion to enforce it; for although the Rowland judgment, on which the execution issued, bears date subsequent to the judgment of condemnation of Rex, yet Rex is the purchaser and is asking that the sale be sustained, and no injury can result from granting him the relief he asks,—the superior lien being his own. The objection which is made to the return on the execution, in this instance, we do not think sufficient to invalidate the *vendi.* which followed. The contention is, that the return "property on hand and unsold" does not meet the requirements of the law; because there does not appear to have been any *levy* or *effort* to sell. The *fi. fa.* directed the sale of the specific land which had been condemned in the judgment of condemnation on which it issued. The land had already been seized and scheduled in the attachment by way of execution on the personal judgment, and this land, so seized, was condemned. This *fi. fa.,* though so called, sustained to the attachment a relation similar to this *vendi's* relation to the *fi. fa.* it follows. When the *fi. fa.* is returned "unsold and on hand" it means the property mentioned in it as already seized and condemned. When the return says the property was "unsold," proper intendment in support of the process, and the presumption that

the officer did his duty supply the reason that it was "for want of buyers."

We think the Circuit Court committed no error in ordering the writ of *habere facias* to issue.

*Affirmed, and*
*cause remanded.*

(Decided 5th December, 1883.)