Duvall, *et al. vs.* Perkins.

JOHN  W.  DUVALL,  and  others  *vs.*  JAMES  T.  PER-
KINS,  Trustee.

*Taxes — Enforcing    payment — Levies—Tender—Statute    of
Limitations.*

Where the land intended to be levied on is described by an endorsement by the tax collector on the tax bills as ''Pt. of Mount Airy 209½a,'' such description is insufficient, and the attempted levy is invalid.

Duvall, *et al. vs.* Perkins.

To constitute a valid levy there must be an actual entry on the land.

A collector authorized under section 115, of Article 17, of the Code of Public Local Laws, to collect taxes left uncollected by his predecessor in office, has no right, in the absence of special statutory authority, to sell under levies made by his predecessor. The collector who sells must first levy, and the transfer of other taxes to him for collection does not carry with it the right to make a sale, where he himself has made no levy.

Where a tender of the amount due for taxes for sundry years, is made to the collector, the refusal by the person making such tender to pay costs demanded, alleged to be due for other and different years, furnishes no excuse to the collector for declining to receive the money tendered to him.

The Act of 1880, ch. 99, providing that the collector of taxes for Prince George's County shall be entitled to certain fees for giving notice and making a levy to enforce the payment of any tax bill in his hands for collection, does not authorize him to exact such fees where the levy was made before the passage of the Act, though payment of the taxes was not tendered until after its passage.

Where the Statute of Limitations is relied on as a bar to the collection of taxes, which are payable by the life-tenant and not by the remaindermen, a promise by the life-tenant to pay the same is sufficient, as against the remaindermen who made no promise, to remove the bar, and to authorize the tax collector to proceed against the land.

APPEAL from the Circuit Court for Prince George's County, in Equity.

The case is stated in the opinion of the Court.

The cause was argued before ROBINSON, C. J., BRYAN, FOWLER, and McSHERRY, J.

*George C. Merrick,* for the appellant.

*R. B. B. Chew, Jr.,* and *R. B. B. Chew,* for the appellee.

McSherry, J., delivered the opinion of the Court.

The original bill of complaint was filed in this case by John W. Duvall against James T. Perkins in the Circuit Court for Prince George's County. Its object was to procure an injunction restraining Perkins from selling for the payment of State and county taxes, certain real estate assessed in the name of Duvall. Part of the taxes alleged to be due had been levied whilst William A. Jarboe was treasurer and collector of the county, and part whilst John G. Hall, his successor, held that office. The amounts remaining uncollected during the term of Jarboe were turned over to Hall by the County Commissioners on April the second, 1880, under *Article* 17, *sec.* 115, of the Code of Public Local Laws, for collection by Hall. Hall died without having completed his collections, and thereupon James T. Perkins was appointed by the Circuit Court sitting in equity, trustee to finish those collections. He advertised the property for sale and Duvall thereupon filed the bill upon which the injunction was issued. The defendant answered, and moved to dissolve the injunction. Subsequently the bill was amended by making the children of Duvall, who are entitled to the estate in remainder, co-plaintiffs. Testimony was taken and after a hearing of the motion to dissolve, the Court passed an order dissolving the injunction and dismissing the bill. From that order this appeal has been taken.

The taxes alleged to be due, and for the payment of which the property was advertised to be sold were, a balance on the county taxes of 1871, State and county taxes of 1872, 1873, 1874, 1875, 1876, 1877, 1878, 1879, 1880, 1881, and 1882, and State taxes of 1883, 1884, and 1885.

It appears by the record that on the fourteenth day of May, eighteen hundred and eighty-six, Duvall in company with his counsel, called upon the defendant, and tendered payment of all State taxes and the interest thereon for the year 1872, and each succeeding year up to and including eighteen hundred and eighty-five, but the defendant refused to receive the sums so tendered unless the plaintiff would also pay the costs of alleged levies which he, the defendant, claimed had been made upon the land by Jarboe in eighteen hundred and seventy-nine, to enforce the payment of the taxes due for the years 1872, to and including 1878: That subsequent to this tender, and without any new demand or refusal of payment, Perkins caused levies to be made upon the same land to enforce payment of the State taxes of the year 1879, and of each year following up to and including the year 1885, and to enforce the payment of county taxes of the year 1879, and each year thereafter up to and including 1882. Under these two levies—the one covering taxes due up to 1879, and made by Jarboe when he was treasurer and collector, and the other covering taxes due up to 1886, and made by Perkins, the trustee—the sale was advertised by Perkins. Assuming for the moment that the proceedings taken by the county commissioners on April the second, eighteen hundred and eighty, under *sec.* 115, *of Art.* 17, *of the Local Code,* (whereby Hall, the successor of Jarboe, was authorized to collect all taxes unpaid for the years during which Jarboe had been treasurer) empowered Perkins as trustee, after Hall's death, to proceed under and to execute the levies previously made by Jarboe; still the validity of the levies purporting to have been made by Jarboe is assailed, and the levies made by Perkins are claimed to have been unwarrantably laid. The levies made by Jarboe, cover, as we have said, part of the amount due for 1871, and all the taxes for the ensuing years up to and

including 1878. These levies, which were indorsed upon the tax bills read: "Pt. of Mount Airy 209½a. Levied this 8th day of July, 1879, upon the above property to amount of debt int. and cost. W. A. Jarboe, county treasurer, per Suit."

It is reasonably and sufficiently apparent from the evidence that neither Jarboe nor his deputy, Suit, entered upon the land of Duvall, and there made these levies. Suit made the entries of these levies on the tax bills in Upper Marlboro' in the presence of Duvall, but not whilst upon the land itself, and there does not seem to have been any other attempt to make a levy at all. Still, assuming that Perkins had authority to make the sale under Jarboe's levies, there are two fatal objections to the validity of those levies; and these are, first, the insufficiency of the description of the property levied on, and, secondly, the fact that a levy was attempted to be made without an entry on the land.

That the description is wholly insufficient is perfectly obvious. No greater certainty is required, and no less is allowable, in a levy of this kind than is necessary in a levy under a *fi, fa.* by a sheriff; and in the latter case the schedule and return must describe the land with sufficient certainty to enable the property to be identified. *Poe's Prac., sec.* 658, *and cases there cited.* The levy in question is far from doing this. If *Pt.* be regarded as meaning part and *a* as signifying acres, there is no statement as to where *Mount Airy* is, or what part or how much of it was levied on. It does not even appear that Mount Airy is in Prince George's County, or who is in possession of it. In a word, there is no *description* at all.

Again: No officer has authority to make a levy without an entry on the land, and a seizure. "It must affirmatively appear in the proceedings that an actual entry and levy upon the land was made. This, indeed, is the

fundamental fact; and its omission is fatal to the execution; and the purchaser will acquire no title. From the nature of the case, however, only such a seizure is to be made as the character of the property admits of, and this can be only an entry upon the land, and a declaration by the sheriff, as part of the act, that his entry is made for the purpose of levying the execution, accompanied by a record of his proceeding." *Poe's Prac.*, sec. 657. The case of *Busey vs. Tuck,* 47 *Md.*, 171, relied on for the opposite view, is far from supporting the position which it was cited as upholding. There the officer entered upon one of two tracts of land, and there made a levy, and included *both* tracts in the schedule, and so notified the owner; and this was held sufficient. But that is very different from attempting to make a levy without any entry at all.

Under *sec.* 50 *of Art.* 81 *of the Code,* before a collector can sell to satisfy overdue taxes, he must make a levy upon the property, and that levy must be lawfully made. If his attempted levy be in law no levy at all, he has no power to make sale. For the two reasons we have given, the alleged levies made by Jarboe up to and including the year 1878 were utterly nugatory, and furnished the collector who made them no warrant or authority to sell the land of Mr. Duvall.

But in addition to this these levies were made by Jarboe, and though Hall was, under *sec.* 115 *of Art.* 17 *of the Local Code,* after the unpaid taxes levied while Jarboe was collector had been turned over to him, authorized to collect, and bound to account for them, "as other taxes placed in his hands for collection," still Hall was not thereby empowered to execute levies theretofore made by some other officer whose term had wholly expired. We have been referred to and we have found no provision of the Code of Public General or Public Local Laws which gives to the successor of a treasurer or collector power

to sell under levies made by his predecessor. The collector who sells must first levy, and the transfer of other taxes to him for collection does not carry with it the right to make a sale where he himself has made no levy. This power to sell to pay taxes is a special statutory process conferred upon the collector by whom the taxes are collectible and the local legislation authorizing his successor to make collections which his predecessor has failed to make, contains no provision allowing the successor to enforce an unexecuted levy. Without some express authority conferred by the Legislature a collector is powerless to complete an execution commenced by his predecessor. In *Purl vs. Duvall,* 5 *H. & J.,* 69, this Court has said "the authorities clearly established the position that if a sheriff, upon a *fieri facias,* seize goods, and return that they remain on hand *pro defectu emptorum,* and he be removed, yet he, and not the new sheriff, is to proceed in the execution; for, an execution being an entire thing, he who begins it, must end it. *Dalton's Sheriff,* 19; *Clerk vs. Withers,* 1 *Salk.,* 325; 6 *Bac. Ab., tit. Sheriff* (1) 161." *Deakins vs. Rex,* 60 *Md.,* 593; *Busey vs. Tuck,* 47 *Md.,* 171. We see no reason for holding that the successor of a collector has any greater authority in this respect than the successor of a sheriff.

Nor do the *Acts of* 1886, *chs.* 237 *and* 238, remedy this difficulty. Those Acts, after reciting the death of Hall and the appointment of Perkins by the Circuit Court to take charge of and complete the collection of taxes which Hall had been empowered to collect, simply authorize Perkins, as trustee, to collect the taxes for the years 1880, 1881, 1882, 1883, 1884 and 1885; but contain no reference to the taxes for the previous years from 1871 to 1880, which had been turned over to Hall from Jarboe as we have hereinbefore stated.

As to all of the State taxes from 1872 to 1885, both inclusive, the evidence shows a legal tender on May the

fourteenth, 1886. Perkins declined to receive the money unless certain costs claimed by him were also paid. These costs amounting to two dollars and fifty cents for each year from 1871 to and including 1878, Perkins demanded, and he refused to receive the sums due for taxes until these costs were paid. Now, no costs had accrued on the tax bills for 1879, and up to and including 1885, for no distraint or levy to enforce the collection of these bills had been made when payment was tendered on May the fourteenth, 1886. The refusal of Duvall to pay costs alleged to be due for other and different years—viz. for 1872 to and including 1878,—furnished Perkins no excuse whatever for declining to receive the money tendered for the State taxes due for the years 1879 and up to 1885, inclusive. The tender as to these latter years was therefore a perfectly good one, and Perkins never having made any subsequent demand for the money due for those years, had no legal right to make a levy upon Duvall's land for these identical taxes, as he afterwards did, on September the thirtieth, 1886. As he had no legal right to make that levy he had for that reason no authority to sell under the levy thus unwarrantably made, and consequently he ought to have been restrained from selling to satisfy the State taxes for 1879, 1880, 1881, 1882, 1883, 1884, and 1885.

Nor had he any right to demand the sum of two dollars and fifty cents costs for each year beginning with 1871 and ending with 1878. When the defective and imperfect levies covering the sums due for those years were made on July the eighth, 1879, there was no Act of Assembly in force authorizing such a charge to be made. As the law then stood the treasurer or collector was not entitled to be paid costs for levies made until after a sale had been effected, and his fees were then to be deducted from the proceeds. But in 1880, by *chapter* 99, the General Assembly fixed the treasurer's fee for giving a

notice and making a levy at two dollars and fifty cents. This Act went into effect nearly a year after the levies, had been made by Jarboe, and it was claimed by Perkins that though, when Suit, acting for Jarboe, professed to make these levies no such costs were legally chargeable, yet the Act of 1880, having been passed before the amount of the taxes was actually tendered, the fee of two dollars and fifty cents could be rightfully demanded. This is not tenable. The Act of 1880, was prospective in its operations. It provides "that every collector of taxes for Prince George's County, or late collector to whom taxes are due and in arrear, shall be entitled to the following fees; for giving notice and making levy to enforce the payment of any tax bill in his hands for collection, the sum of two dollars and fifty cents, &c." It made provision for future levies by collectors or ex-collectors, but did not undertake to prescribe a compensation for services which had already been fully rendered. What was due by Duvall to the collector when the Act of 1880 was passed, was the State tax and interest— nothing more—even if valid levies had been made; and the Act of 1880 did not increase the amount of that indebtedness by the addition of fees for official work that had been previously performed. Had Duvall tendered payment of the taxes before the Act of 1880 was passed, and after the alleged levies had been made, the treasurer could not have demanded any costs at all. The Act of 1880, gave him no right to charge for work which had been done before its passage, and he performed nothing additional under it which entitled him to compensation. He was consequently in no position to exact the costs he did exact, and his refusal to receive the taxes, tendered him was without justification. Having made no new demand for the payment of these taxes, he was not authorized to sell the property, and, as to those taxes also, he should have been restrained from selling.

Our conclusion on this branch of the case, then, is that Perkins, for the reasons we have assigned, was not authorized to sell Duvall's property for any of the State taxes due for the years 1872 up to and including 1885.

With respect to the county taxes, the Statute of Limitations was relied on. It is not pretended by Duvall that he has paid these taxes, but he insists that they cannot be collected because they were over-due more than four years before the day fixed for the sale of the property by the treasurer. This is an attitude which does not commend itself to a Court of equity, but, having been assumed, it must be met and disposed of. We have held heretofore that though county taxes are barred by the statutory limit of four years, an acknowledgment will remove the bar. *Perkins vs. Dyer*, 71 *Md.*, 421 ; *President and Directors of Georgetown College vs. Perkins*, 74 *Md.*, 72. In the case at bar the evidence that a new promise on the part of Duvall had been made and often repeated within four years before the property was advertised for sale was quite sufficient to remove the bar as the case stood when the bill of complaint was filed. As a new levy will be necessary before a sale can be made to enforce the payment of any of the taxes due by Duvall except the county taxes of 1879, 1880, 1881, and 1882, we forbear to express an opinion as to whether the remaining county taxes are again barred by the Statute.

But it is insisted that Duvall's promise cannot be relied on as against the remaindermen who made no promise at all. This is a mistake. Taxes are payable by the life-tenant and not by the remainderman. *Cooper, et al. vs. Holmes*, 71 *Md.*, 20; *Donohue vs. Daniel, et al.* 58 *Md.*, 595. His promise therefore was sufficient to authorize the collector to proceed against the land.

The county taxes beginning with those of 1871 and ending with those of 1882 are still due, with interest, but no costs are properly chargeable as having accrued

thereon, except under the levies made by Perkins for the years 1879, 1880, 1881, and 1882. None of these county taxes have been paid by Mr. Duvall, and they were not barred by the Statute of Limitations when the bill of complaint was filed. As to the county taxes due for the years 1879, 1880, 1881, and 1882, the levies made by Perkins are free from objection, and as he was in a position to make sale to enforce their payment, the plaintiff is not entitled to relief by injunction as to them. He should have brought into Court when the bill was filed, the amounts due for county taxes, with interest and costs, for the years 1879, 1880, 1881, and 1882.

For the errors we have indicated, the order appealed from will be reversed, and the cause will be remanded, that an injunction may be issued, restraining the sale of the property of the plaintiff under the levies heretofore made, provided he brings into the lower Court to be paid to the defendant the amount of the county taxes for 1879, 1880, 1881, and 1882, with interest, and the costs of the levies for those county taxes.

*Order reversed, with*
*costs in both Courts,*
*and cause remanded.*

(Decided 21st June, 1893.)