OTTMAR MERGENTHALER, trading as OTT. MERGEN-
THALER & CO. *vs.* WILLIAM H. KIRBY.

*Action for Damages—Trespassing child— When case.*
*should be Taken from the Jury.*

A boy about twelve years of age went upon the premises of the
defendant—a manufacturer of typesetting machines—without
the authority or knowledge of the defendant or any of his
agents or employés, for the purpose of purloining type metal or
lead scrap which was in a box near the factory wall, and
which had been placed there by defendant's orders. While thus
trespassing on the defendant's premises the boy was injured by
the sudden discharge of water and steam from a pipe connected
with an engine in the defendant's factory. The presence of the
boy was unknown to the engineer when he " blew the boiler off,
to ease the pressure on it, for reasons of safety." In an action
by the father of the injured boy to recover damages arising
from the injury to his son, and for the amount expended for
medicines and medical attention, it was HELD:

That the defendant was not liable, and the case should have
been taken from the jury.

APPEAL from the Court of Common Pleas.

The case is stated in the opinion of the Court.

The cause was argued before ROBINSON, C. J., BRYAN,
FOWLER, PAGE, ROBERTS, MCSHERRY, BOYD and BRIS-
COE, J.

*Charles W. Field,* for the appellant.

*W. Baltzell Jenkins,* and *Henry J. Broening,* for the
appellee.

FOWLER, J., delivered the opinion of the Court.

Mergenthaler *vs.* Kirby.

The defendant is a manufacturer of typesetting machines, and his factory is located in Baltimore city, about six hundred feet south of Fort Avenue, and about half that distance from the southern extremity of Burroughs street. On the east and west of the factory for several hundred yards there are open lots or commons. The nearest house is one block distant, at the foot of Burroughs street. To the south are the Baltimore and Ohio Rail Road tracks and the river. It is apparent from this description that the defendant's factory is not in a built up or densely populated part of the city.

Howard Kirby, a boy about twelve years old, together with two companions, aged respectively fourteen and sixteen, went upon the premises just mentioned, without the authority or knowledge of the defendant or of any of his agents or employés, for the purpose of getting type metal or lead scrap, which was in a box near the factory wall, which metal had a value of eight cents per pound, and had been placed there by the defendant's orders. His employés had directions always to pick over the contents of this box and to save the metal for use in the factory.

One of the boys testified that he had before sold the lead and scrap to a junk dealer, and intended to make the same disposition of what he secured or expected to secure the day Kirby was injured. While the boys were thus engaged in trespassing on the defendant's premises and purloining his property, the engineer in charge of the engine " blew the boiler off to ease the pressure on it for reasons of safety." Of course, it is not suggested that there was any intention of injuring the boys, for their presence was unknown to the engineer. But while they were standing between the scrap box and the end of the pipe, the water and steam rushed out, and the boy Kirby was unfortunately scalded. However, if instead of running as he did, between the mouth of the pipe and the wall of the factory, he had passed on the other side, he

would have been uninjured. The defendant testified that "there was room enough between the box and the coal-bins for the boys to run behind the pipe instead of in front of it, if they had chosen to do so." The evidence is that the pipe came out from under the south wall of the engine room, and ran southerly under ground about fifteen feet alongside of and four or five feet from the west wall of the factory. A joint or elbow about three feet long was screwed on the end of the pipe and tilted over at an angle towards the wall of the factory. The factory yard, in which the pipe was located, was enclosed on three sides by the engine room, the factory and the coal-bins.

The defendant was sued by the father of the injured boy to recover damages arising from injury to his son, and for the amount expended for medicines and medical attention.

Several prayers were offered on both sides, but the controlling question is whether in any aspect of the case, as presented, the plaintiff was entitled to a verdict. The jury found in favor of the plaintiff, and the defendant has appealed.

In our opinion the case should have been taken from the jury. One of the fundamental rules governing all cases of this kind is that the plaintiff cannot recover unless he establishes " a right on his part, a duty on the part of the defendant in respect to that right, and a breach of that duty by the defendant, whereby the plaintiff has suffered injury." *Maenner vs. Carroll et al.*, 46 *Md.*, 212. In the case just cited, the plaintiff, as here, was a trespasser, and "having no right to be on the lot, the injury which he suffered by falling into an excavation," the Court held, "must be attributed exclusively to his own fault." As we understand the contention of the appellee it is, that it was a neglect or breach of duty on the part of the defendant to use the pipe in question as it was used, for the purpose of emptying the surplus water and steam into the

yard in the rear of his factory, which yard, as we have seen, is enclosed on three sides. We know of no principle of law which will justify such a proposition. On the contrary, to hold an owner liable under such circumstances would, as was said in *Frost vs. Eastern Railroad*, 64 *N. H.*, 221, be an unreasonable restriction of his enjoyment and use of his land.

None of the cases cited by the appellee sustain, as we think, the position he is here contending for, and if they did, we could not assent to them. In *Stone vs. Dry Dock &c. Co.*, 28 *Am. Law Reg.*, 547, the child was injured on a public street where it had a right to be. In *Hydraulic Works Co. vs. Orr*, 83 *Penna. St.*, 332, several children were injured by the falling of a trap door or inclined way, and the Court say: " The gate and passage way opened out upon a public and much frequented street, where persons were passing and children were playing. Unlike an ordinary private alley, this passage was often open, and therefore liable to the incursions of children, and even grown persons, from thoughtlessness, accident or curiosity. Now, the inclined way which did the injury was a dangerous trap. * * * * When not lowered it stood upright against the wall, leaning so little beyond the center of gravity that a jar or slight pull would cause it to fall forward." In this case a verdict against the defendant was sustained, but the Court was careful to distinguish it from a case like the one we are considering, and said " that, where no duty is owed, no liability arises," and that when one enters a private yard, and is injured by falling into an open well or otherwise, he can have no action against the owner, unless he were present and could have prevented the injury. " The person injured had no business there, and the owner owed him no duty." In *Barry vs. New York Central & Hudson River R.R. Co.*, 92 *N.Y.*, 289, another case relied on by the appellee, but not sustaining his view, was where a child ten years old was injured at a public cross-

ing, and the defendant was held liable. But the opinion of the Court is based upon the principle that, the crossing being public, the defendant was apprised that it is attended with danger, and it was held that the character of the crossing imposed a duty upon the defendant in respect of persons using the crossing.

There is also a line of cases like the *Railroad Company vs. Stout,* 17 *Wall.,* 657, in which the owners of property have been held responsible for injury to children caused by dangerous machinery easily accessible and attractive to them. But these cases we think have no application here, for, according to the evidence, the boy was injured while attempting unlawfully to take the defendant's property.

And it will be found that most of the many cases cited by the appellee are similar to one or other of the four cases we have just referred to, none of which, as we have shown, sustain the contention of the appellee in this case. For here the injured person was not only a trespasser, but, perhaps without fully realizing it, was engaged in a criminal act when injured, and he had no right, therefore, to demand protection from the defendant.

In the case of *Frost vs. Eastern Railroad,* 64 *N.H.,* 221, decided in 1886, in which it appears that a boy seven years old was injured while playing upon a turntable, it is said that: " The turntable was required in operating the defendant's road. It was located on its own road so far removed from the highway as not to interfere with the convenience and safety of the public travel, and it was not a trap set for the purpose of injuring trespassers." And the same principles are announced by this Court in the case of *Maenner vs. Carroll,* 46 *Md.,* 193, and in the more recent case of *Benson vs. Baltimore Traction Co.,* 77 *Md.,* 535.

It follows that the judgment must be reversed.

*Judgment reversed.*