STATE, Use of August Lorenz, *v.* ARTHUR
W. MACHEN, Jr., Trustee.
[No. 23, January Term, 1933.]

*Decided April 20th, 1933.*

580

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Edgar Allan Poe, Jr.,* for the appellant.

*Alexander Armstrong* and *H. Vernon Eney,* with whom were *Armstrong, Machen & Allen* on the brief, for the appellee.

BOND, C. J., delivered the opinion of the Court.

An appeal from a judgment for a defendant on demurrer to the plaintiff's declaration presents in this case a question whether allegations of accidental death to a boy of ten years, while playing on the defendant's property, would if proved establish liability on the defendant for damages. The allegations are these: The defendant was a trustee holding title to the property with all powers of an owner, including that of improving by grading and excavating. The property is unfenced, unimproved land, the soil of which is composed mostly of sand and gravel, and there is a bank of such soil on one part of the property ten or twelve feet high, about thirty feet from a public street, and in plain view from the street. The defendant, his agents and employees, had been carrying on work with a steam shovel, and the bank was artificially made in the course of these shoveling operations, and was in some places precipitous and in other places concave; and there was a cave or tunnel left in one bank sufficiently large to be occupied by several children at once. Children of the neighborhood and others living at a distance had been attracted to this land and had been using it openly and notoriously, and to the knowledge of the defendant, for several years, as a playground. There was no attempt made to keep the children off; but, on the contrary, a caretaker employed by the defendant permitted the children to come there and play, and gave them express authority to do so, although he knew or should have known that the property was unsafe for children of tender years. Some weeks prior to the accident,

the deceased boy and others, seeing the cave or tunnel, began to play in it, acting upon the permission given them to play there, and they worked during those weeks to enlarge the cave or tunnel, with the full knowledge and acquiescence of the caretaker. This boy was caught in a caving-in of the earth. The extent of the enlargement dug is not clearly alleged. The defendant argues that these allegations contain a statement of impossible fact because it is undeniably true that a steam shovel works only in a forward ascending curve, and could not make a cavity in a bank; but the court is not able to say from its own knowledge that a shovel could never, by any movement, leave a cavity in some spot. Testimony would be needed.

The several forms of expression of the caretaker's attitude or action state only an acquiescence or permission for the boys to play in what is described as the cave, and do not allege invitation or inducement, express or implied, as when persons are led to come on property on business of the owner or otherwise. *Benson v. Baltimore Traction Co.,* 77 Md. 535, 539, 26 A. 973. It has sometimes been argued that attraction for children in a place or object on land, as left by the owner in the course of work on the property, amounts to such an invitation or inducement by the owner himself, and removes children whose presence is permitted from the legal classification of licensees and places them in that of invitees, with the burden of care for them as invitees cast upon the owner; but that argument does not mean that the owner by his permission has in fact brought the children on the property intending and desiring that they should come there, and into the position of danger, as he would when bringing business visitors there. And especially does it not mean that children are in fact brought to dig and make a cave or tunnel for themselves. The case here is that the owner has merely permitted or acquiesced in the use of the land by playing children, and therefore he has not invited them to incur any dangers; and if a duty of care similar to that owing to invitees is imposed upon him it must be by way of a relaxation of the rule that mere permission bestows

no rights, and imposes only the more limited obligation with reference to licensees. *Burdick, Law of Torts* (4th Ed.), 199, etc. The question submitted is: Given the facts that boys of ten years, among other children, were accustomed and permitted to play on this open land, that grading operations which had been carried on by the owner left in a bank at one place a cavity to which some ten-year-old boys were attracted as a place suitable for digging an enlarged cave or tunnel, that for several weeks the boys dug and enlarged the cave, all with the knowledge and acquiescence of a caretaker on the property, was there a legal duty cast upon the trustee holding the property to protect the boys from danger of caving in of the earth, and was such a duty violated in the caretaker's failure to perform it? The defendant raises, on his side, a question whether the caretaker's attitude and inaction could give rise to a relation between the owner and the boys playing on the property, whatever duty might be placed on the owner for his own action or omission, but it has not been found necessary to consider this question; and some others argued are likewise left unconsidered.

In several cases this court has had to consider claims of persons on property of others by license or permission, as distinguished from invitation or inducement. *Maenner v. Carroll*, 46 Md. 193; *Balto. & O. R. R. Co. v. State, use of Allison*, 62 Md. 479; *Benson v. Baltimore Traction Co., supra; Kann v. Meyer*, 88 Md. 541, 41 A. 1065; *Baltimore v. De Palma*, 137 Md. 179, 112 A. 277. And the decisions in those cases have declared the familiar principle that permission or license gives leave only to take the property as the visitors find it, and that the owner or occupant undertakes no duty to those visitors who come for their own pleasure or convenience, and not at his invitation or upon inducement, express or implied, from a common advantage, except that, being aware of their presence, he must not injure them wilfully or entrap them. "A licensee must take the property as he finds it, and is entitled only not to be led into danger by 'something like fraud.'" *Pollock, Torts* (11th Ed.), 544.

"He who is receiving the gratuitous favors of another has no such relation to him, it is said, as to create a duty to make safe or better than it happens to be, the place where the hospitality is tendered. The licensee must take the premises as he finds them. At most, he can claim only that the licensor shall abstain from entrapping him to his harm; shall not create new and undisclosed sources of danger without warning him of the change in situation." *Burdick, Law of Torts* (4th Ed.), 548. And whatever differences there may be between the legal positions of trespassers and persons present by permission, to this extent they are the same; the rule stated applies to both. See *Benson v. Traction Co.,* 77 Md. at page 542, 26 A. 973. The trap, or "something like fraud," which is mentioned as a ground of liability to licensees, is commonly illustrated by the case of *Corby v. Hill,* 4 C. B. N. S. 556, explained at length in *Maenner v. Carroll, supra.* There, a pile of slates was placed without warning in a roadway used by visitors so as to catch them by surprise; and it caused an accident. Judge Alvey distinguished the case of *Maenner v. Carroll* by the fact that the work during which the injury in the latter case was caused had been going on for six months, and therefore there had been no lack of warning. See *Beck v. Carter,* 68 N. Y. 283; *Davis v. Railway Co.,* 58 Wis. 646, 17 N. W. 406; 3 *Shearman & Redfield, Negligence* (6th Ed.), sec. 705; 1 *Beven, Negligence,* 563; *Lowery v. Walker* (1911), A. C. 370.

*Maenner v. Carroll* was a case of injury from falling unawares at night into a trench which was cut in the course of constructing a street across a lot of ground where people, including the plaintiff, had been permitted to cross and recross at pleasure and without hindrance or interruption; and the court held that no duty to the plaintiff was shown by those facts, and therefore no liability. In *Benson v. Baltimore Traction Co., supra,* the rule was applied in a suit by an injured minor. The principal of a manual training school had written the president of the company asking permission

584

for the graduating class to visit two power houses, and the president had indorsed, "Admit the class as requested"; and a boy while examining machinery fell into a vat of boiling water in a part of the building into which an employee had led the class and left them to examine the machinery for themselves. There was insufficient light at the place, and the boy, not seeing the vat, the sides of which were flush with the floor, fell into it as stated. Some of the teachers of the school were with the boys, but while referring to that fact, too, the court denied the existence of liability because of the absence of a duty of care for licensees, repeating statements of the principle and finding the case to be "a bald case of permission asked and leave granted." The case has long been a leading one in Maryland on the law concerning injuries to licensees. The injured boy in that case was presumably six or seven years older than the boy who suffered in this instance; but so far as the condition left by the owner's shoveling in this case is concerned, the Benson boy's case seems similar in its essentials, inasmuch as he, too, while on premises by permission, received injury from uncomprehended danger; the fact that lack of comprehension in his case may have come from justifiable ignorance of the danger, while in the present case it may have come from lack of appreciation of dangers generally, by reason of immaturity, seems to afford no ground for a legal distinction. The principle has been stated and applied in the later Maryland case of *Stansfield v. C. & P. Tel. Co.*, 123 Md. 120, 91 A. 149, a case of injury to an adult.

In addition to the case of injury to a minor in the *Benson* case, there have been before the court three cases of injury to trespassing children, who were either forbidden to come on the premises or were unexpected, and recovery was denied in each of them. *Mergenthaler v. Kirby*, 79 Md. 182, 28 A. 1065; *Baltimore v. De Palma*, 137 Md. 179, 112 A. 277; and *State v. Bealmear*, 149 Md. 10, 130 A. 66. The last previous case of a child injured on private property was that of *State v. Longeley*, 161 Md. 563, 158 A. 6, 7, in which a boy of

twelve, playing about a pond in a quarry hole, was drowned. The declaration alleged that the defendants had direct knowledge that children of tender and immature years were constantly playing in and about the quarry with an implied invitation, yet negligently permitted the premises to remain unguarded and without notice or warning to the children of the danger, and also left a cable placed so that the children could reach the water and a floating raft which attracted the drowned boy and others. The court applied the principles stated in *Maenner v. Carroll, supra,* and found the allegations insufficient. And the allegations in that case are closely similar to those now to be dealt with.

Therefore, as was remarked by Judge Adkins, in the opinion in *State v. Longeley,* "The doctrine of attractive nuisance has never been applied in this state, although this court has had before it at least three appealing cases in which it was strongly urged that the doctrine was applicable." The case of *State v. Longeley* was a fourth. Up to this time the court has not found in any case before it ground for making an exception for children from the rule, applied in *Maenner v. Carroll* and *Benson v. Traction Co.,* that no undertaking of care is involved in permission to come upon private property, apart from avoidance of entrapment or change without warning. Whence, then, comes the duty contended for in this declaration? What are the distinguishing facts that would support an exception of this case from the rule that permission bestows no rights, and that would render permission or acquiescence in the children's digging a cave for themselves on the place an assumption of duty to care for the children there? This court has not been able to find any, and concurs in the action of the trial court sustaining the defendant's demurrer.

In efforts to define a ground of exception in some of the many discussions of this general subject of liability for injuries to minors, the questions appear to be obscured at times by arguments and suggestions on which judicial decision cannot be rested, and care must be taken to exclude them. The law, as it is given to us to be applied, does not undertake

to provide, for every case of accident and injury or death, a defendant liable to pay compensation for it, whether the injured be adult or infant; many accidents, perhaps most, occur without fault of others, and their consequences must be left to lie where they fall. The law is concerned only with wrong, violation of a legal duty, and where there has been no wrong committed there is no recourse to the law for compensation except under the Workmen's Compensation Act, with which this case has nothing to do. And revulsion of feeling naturally aroused by injuries or death to children, and sometimes too, by injuries or death to adults, cannot serve to establish wrong by some other person or persons.

There was no duty toward playing boys violated in this owner's grading his land; that was lawful work, not concealed or so managed as to constitute a trap. There was no duty that this court can see violated in permitting boys to continue coming on the land to play after the grading was done; it would hardly be practicable to keep them off. It is customary to permit children of a city to play freely on open and unused land nearby, and if it were possible to prevent their doing so, its desirability would be doubtful. Indeed, it does not appear that there was any danger in the land as the owner left it, and as the boys found it, after grading. To repeat, the earth caved in on this unfortunate boy, not only after the grading at this place, but after the boys had dug further for several weeks. The wrong, if any, could have been only in having left in the bank a cavity which suggested to the boys the digging of their cave, or in failing to protect the boys in their play either by filling their cave or preventing their use of it. And the duty contended for would in the last analysis seem to be one of exercising supervision over the play of children on the land, giving it the attention necessary to see that they do not endanger themselves. We have no rule or principle that attaches a duty in either respect as a condition to allowing boys to play on land.

*Judgment affirmed, with costs.*