HICKS, ET AL. *v.* HITAFFER, ET AL.

[No. 236, September Term, 1969.]

*Decided February 6, 1970.*

660

The cause was argued before HAMMOND, C. J., and BARNES, FINAN, SMITH and DIGGES, JJ.

*William H. Clarke* for appellants.

*John A. Buchanan,* with whom were *Lansdale G. Sasscer, Jr.* and *Sasscer, Clagett, Powers & Channing* and *Melvin L. Schneider* on the brief, for Frank M. Hitaffer, one of appellees. *Thomas L. Samuel,* with whom were *H. Russell Smouse* and *Clapp, Somerville, Black & Honemann* on the brief, for The Baltimore and Ohio Railroad Company, another appellee. *Albert T. Blackwell, Jr.,* with whom were *Couch, Blackwell & Miller* on the brief, for S. B. Pruitt, another appellee. *Joseph B. Simpson, Jr.,* with whom were *Vivian V. Simpson, H. Algire Mc-Faul, William T. Wood, Joseph J. D'Erasmo* and *Simpson & Simpson* on the brief, for Jerry Wolman Construction Company, other appellee.

SMITH, J., delivered the opinion of the Court.

Here we have an attempt to recover on behalf of a nine-year-old boy who lost the sight of one eye as a result of the explosion of a .22 caliber blank cartridge. The brief filed on his behalf says that he and other boys threw rocks at the cartridges and when this "child's explosive would not go off he took it near his home and hit it with a hammer. It then went off * * *." Suit was brought on behalf of the boy, Herbert D. Hicks (Herbert), by his parents. The father also sued in his own right. They appear here as appellants. Defendants and appellees here are the landowner, The Baltimore and Ohio Railroad Company (B

& O) ; the alleged occupant of the land, Frank M. Hitaffer (Hitaffer) ; the former owner of an automobile junked and sold to Hitaffer, S. B. Pruitt (Pruitt) ; and Pruitt's employer, Jerry Wolman Construction Company (Wolman). Judge Powers in the Circuit Court for Prince George's County sustained demurrers on behalf of all defendants to the amended declaration without leave to further amend, saying:

> "The indispensable element of duty is lacking in the minor plaintiff's case. The defendants owed no duty to him, as a trespasser or licensee, '. . . . except to abstain from wilful or wanton misconduct and entrapment.' See *Herring v. Christensen*, 252 Md. 240, and cases cited therein. I cannot read wilful or wanton misconduct or entrapment into any of the acts of the defendants as alleged in the Amended Declaration."

We shall sustain the ruling of Judge Powers.

The declaration states that young Hicks on April 3, 1967, was nine years of age, that on that day he sustained an injury to his eye "as the result of the negligence and carelessness of the Defendants and each of them" and, as a result, the right eye was removed on August 3, 1967, and a plastic eye inserted. It alleges, of course, that Herbert was in no way negligent. It further alleges in pertinent part:

> "The Defendant Pruitt, prior to the injury to the minor Plaintiff, was involved in an automobile accident and his automobile was damaged to the extent that it was a total loss, which damage included damage to the trunk thereon leaving it open and the contents therein accessible to any person; that he sold his damaged automobile to the Defendant Hitaffer for junk and he knew that the automobile was to be stored on an open field in the back of Defendant Hitaffer's

place of business and that said automobile would be readily available to children; that in the trunk of his automobile were hundreds of detonator caps which he used in the course of his employment as a carpenter foreman for the Defendant Jerry Wolman Construction Company; that he stored the detonator caps in the trunk of his car in violation of Article 38 (a) [sic] of the Maryland Code, which required the Defendant Pruitt to store explosives in a safe and secure place for the purpose of making them inaccessible to children and to account for the explosives to his employer in order to prevent them from becoming available to children and further it required him to obtain a license prior to the handling and storage of said explosives; that the Defendant Pruitt, in handling and possessing an inherently dangerous substance, to-wit, explosives, had the common law duty and statutory duty to be extremely careful in safeguarding such explosives and not make them available to or accessible to any person, particularly children, outside of the scope of his employment activities; that he had the duty to remove the explosives from his automobile prior to the sale thereof to the Defendant Hitaffer and further, the duty to warn the Defendant Hitaffer of the presence in the damaged automobile of explosives; that notwithstanding such duties owed to the minor Plaintiff and to the public in violation of Section 38 (a) [sic] of the Maryland Code, Defendant Pruitt who was also unlicensed in violation of Section 38 (a) [sic] did negligently and carelessly sell his damaged automobile to the Defendant Hitaffer, and cause the minor Plaintiff and other children to pick up detonator caps which were strewn on the ground outside of the car and in the open trunk which in turn caused the minor Plaintiff to lose

his right eye when one of the caps exploded, which negligence was a proximate cause of the injuries suffered by the minor Plaintiff herein.

"The Defendant Hitaffer purchased Defendant Pruitt's damaged automobile and at the time of purchase the trunk thereon was damaged and open; that the Defendant Hitaffer and the Defendant Pruitt did place and store the automobile outside of the fenced property belonging to the Defendant Hitaffer in an open field which was indistinguishable to children of tender age as being private property or public property or parkland; that the Defendant Hitaffer knew that minor children did play in the open field to the rear of his property, which field was very close to a public grammar school, and the Defendant Hitaffer placed the Defendant Pruitt's damaged automobile on said field along with other automobiles which field belonged to the Defendant The B & O Railroad Company; that the Defendant Hitaffer permitted and invited children of tender age to play upon the property belonging to the Defendant B & O Railroad; that the Defendant Hitaffer knowing that children would be playing upon and in said automobiles by virtue of his permitting and inviting them to do so, had the duty to inspect said automobiles prior to placing them upon B & O Railroad property to make certain that they were in a safe condition and did not contain therein dangerous substances or explosives which would injure a young child; that he had the further duty not to unlawfully invite and entice young children to play upon property he did not own, particularly since said property was an open area and was not apparent to young children that it was private property; that notwithstanding said duties he negligently and carelessly failed to inspect the Defendant Pru-

itt's automobile for dangerous substances; he unlawfully authorized minor children, including the minor Plaintiff, to play on and in the car purchased from Defendant Pruitt and other automobiles stored in said field; that he negligently and carelessly put the automobile on the field causing the trunk of the car to open and the detonator caps to be strewn about the field and to be left in plain sight in the open trunk of the car; that notwithstanding said duties as aforesaid, he negligently stored his automobile in an unfenced area on private property belonging to another and he failed to have a license to possess explosives as required by Article 38 (a) [sic] of the Maryland Code; that as a result of the violation of said duties as aforesaid his actions proximately contributed to the injuries of the minor Plaintiff.

"The Defendant B & O Railroad Company was the owner of the property on which the Defendant Hitaffer stored the automobile which he purchased from the Defendant Pruitt, and B & O Railroad Company allowed Hitaffer to store the wrecked automobiles in the open and as the landowner, it had the duty to inspect such automobiles to make sure there were no traps or dangerous instrumentalities or conditions present on its land since its land was unfenced and was indistinguishable to young children to be either private or public property; that it allowed the storage of dangerous instrumentalities thereon and it knew or should have known that children were playing in the area, and being charged with notice, failed to inspect its land and the old stored automobiles thereon that it permitted and allowed to be stored thereon by the Defendant Hitaffer.

"The Defendant Jerry Wolman Construction Company had the duty pursuant to Section 38 (a)

[sic] of the Maryland Code and by common law to store and safeguard explosives used in construction work and to require its employees to account to it for any supply of explosives used by its employees in its business in order to prevent such explosives from coming into the possession of unauthorized persons, particularly very young children, that notwithstanding such duties the Defendant Construction Company was negligent in that it failed to obtain a permit for the use of explosives as required by Article 38(a) [sic] of the Maryland Code as amended, and it failed to account for the detonator caps which caused the injury to the minor Plaintiff, as required by Section 38(a) [sic], Sections 27, 28 and 29 of the Maryland Code as amended, and it failed to properly inform or instruct its employee, Pruitt, not to take the explosives not necessary in the carrying out of his duties and because of these negligent acts, the Defendant Pruitt was allowed to store dynamite caps or detonator caps in the trunk of his car. Pruitt was then the agent, servant or employee of the Construction Company and was acting within the scope of his employment, and that said negligence on the part of the Defendant Construction Company was a proximate cause of the damages and injuries to the minor Plaintiff."

Two points of clarification become immediately necessary. The "explosive" in question, referred to as "detonator caps" and "dynamite caps" in the declaration, was stipulated at argument before us to be a .22 caliber short blank cartridge such as is used by contractors in nail guns and such as is used in starting guns for athletic events. We were shown an "explosive" of this type. The statute in question, despite conflicting references to it, is Code (1965 Repl. Vol.) Art. 38A, §§ 26-36. It is not here applicable since § 26 states the term "explosives" does

"not include fixed ammunition for small arms * * *." The reason for this exclusion is speedily noted when one realizes that if this exception did not exist it would be unlawful without a license first obtained from the sheriff or police chief for any hunter to possess ammunition for his own enjoyment or for any homeowner to possess ammunition for his own protection. Moreover, a careful reading of the statute does not reveal standards there imposed relative to the use and possession of explosives as one might infer from reading Herbert's declaration.

The plaintiffs in this case recognize our holding, as indeed they must, in *Herring v. Christensen,* 252 Md. 240, 249 A. 2d 718 (1969), in which we said:

> "It is well established law in Maryland that 'the owner of land owes no duty to a trespasser or licensee, even one of tender years, except to abstain from wilful or wanton misconduct and entrapment.' *Levine v. Miller,* 218 Md. 74, 79, 145 A. 2d 418, 421. See *Carroll v. Spencer,* 204 Md. 387, 104 A. 2d 628; *Benson v. Baltimore Traction Co.,* 77 Md. 535, 26 A. 973; *Duff v. United States,* 171 F. 2d 846 (4th Cir.). * * *
>
> "The problem of injury to trespassing children has been before this Court on many occasions. Since 1894 in *Mergenthaler v. Kirby,* 79 Md. 182, 28 A. 1065, we have uniformly rejected any exception to the rule that trespassers and bare licensees take the premises as they find them. *Levine v. Miller, Carroll v. Spencer,* both *supra; State v. Fidelity Warehouse Co.,* 176 Md. 341, 4 A. 2d 739; *State v. Machen,* 164 Md. 579, 165 A. 695; *State v. Longeley,* 161 Md. 563, 158 A. 6; *Balto. City v. De Palma,* 137 Md. 179, 112 A. 277." *Id.* at 241.

They say it is not their intent to seek a change in the Maryland law with respect to a landowner's duty to trespassers or licensees, nor, so they say, do they advocate the adoption of the attractive nuisance doctrine in any

form. They contend that there is a "universally recognized exception to these general rules, that one who is under a duty to exercise the care in using, maintaining and handling extremely dangerous explosives owes a duty especially to children and those of immature judgment, irrespective of the fact that the status of the person may be that of a trespasser or licensee."

The only statute cited by Herbert is Art. 38A and we have already seen that that is not applicable.

Herbert in this case was a licensee, a fact apparently conceded by him. See the concise differentiation between a licensee and an invitee set forth by Chief Judge Sobeloff in *Peregoy v. Western Md. R.R. Co.*, 202 Md. 203, 95 A. 2d 867 (1953):

> "First we consider the question, was the appellant an invitee or a licensee and what was the measure of care due him by the appellee? A licensee is one privileged to enter another's land by virtue of the possessor's consent, for the licensee's own purposes. He must take the property as he finds it, the owner or occupant undertaking no duty to a visitor who comes for his own pleasure or convenience, except that, if he becomes aware of the licensee's presence, the licensor must not injure him wilfully or entrap him. *Brinkmeyer v. Iron and Metal Co.*, 168 Md. 149, 177 A. 171. An invitee or business visitor is one invited or permitted to enter or remain upon land for a purpose connected with or related to the business of the occupant. He is entitled to the exercise of ordinary care by the owner or occupant of the premises to discover as well as to avoid any danger which might threaten him through the use of any agency under his control. *Balto. & Ohio R. Co. v. Walsh*, 142 Md. 230, 120 A. 715." *Id.* at 207.

Judge (now Chief Judge) Hammond in *Carroll v.*

*Spencer,* 204 Md. 387, 104 A. 2d 628, 44 A.L.R.2d 1247 (1954), said:

"Acquiescence is not invitation, and at most, changes the status of the trespasser to that of bare licensee, to whom the owner owes no greater duty than to a trespasser. *Jackson v. Pennsylvania R. R.,* 176 Md. 1; *Benson v. Baltimore Traction Co., supra; State, Use of Lorenz v. Machen,* 164 Md. 579; and *Duff v. United States,* (4th Cir.) 171 F. 2d 846.

"* * * The *Restatement, Torts,* Sections 337-339, adopted the essence of the Michigan rule, while Maryland has continued to follow the substance of the Massachusetts rule. This is made clear by *Jackson v. Pennsylvania R. R., supra;* and *Duff v. United States, supra.* In the *Duff* case, Judge Soper said for the Court (at page 850 of 171 F. 2d): 'Generally speaking, the owner of land in Maryland owes no duty with respect to the condition of his land to a trespasser, or even to a licensee, whose presence upon the land is known to him, except to abstain from wilful or wanton misconduct. *Benson v. Baltimore Traction Co.,* 77 Md. 535, 26 A. 973, 20 L. R. A. 714, 39 Am. St. Rep. 436. The owner owes no duty to the trespasser or licensee to keep the premises safe or to anticipate his presence and warn him, and the trespasser or licensee acquires no right of recovery except in the case of wilful injury. *Gordon Sleeprite Corp. v. Waters,* 165 Md. 354, 168 A. 846; *Pellicot v. Keene,* 181 Md. 135, 28 A. 2d 826; *Steinwedel v. Hilbert,* 149 Md. 121, 131 A. 44.' " *Id.* at 393-94.

The vast majority of cases in other jurisdictions holding liable an individual with reference to explosives in the absence of statute are in states which have adopted the attractive nuisance theory. See Annot., 10 A.L.R.2d

22 (1950). The attractive nuisance doctrine has not been adopted in Maryland. See, for instance, *Conrad v. City of Takoma Park,* 208 Md. 363, 369, 118 A. 2d 497 (1955).

The word "explosive" carries a frightening connotation. A person is no more dead, however, who is killed with an explosive than one killed, for instance, by electrocution, nor do we believe the pain suffered from an explosive to be any more excruciating than that suffered from severe burns or scalds.

Applying the rules relative to trespassers and licensees above set forth, the cases in which this Court has refused to hold the landowner responsible to children who were either trespassers or licensees have included injury by falling into a vat of boiling water, *Benson v. Baltimore Traction Co.,* 77 Md. 535, 26 A. 973 (1893); injury by hot water and live steam when a boiler was "[blown] off to ease the pressure on it for reasons of safety", *Mergenthaler v. Kirby,* 79 Md. 182, 28 A. 1065 (1894); injury by electrical shock when climbing a pole in a school yard, *Grube v. Mayor, etc. of Balto.,* 132 Md. 355, 103 A. 948 (1918); injury by falling lumber on a city-owned pier where boys played, *Balto. City v. De Palma,* 137 Md. 179, 112 A. 277 (1920); death by falling from a plank between the second story of two buildings under construction where boys had played, *State v. Bealmear,* 149 Md. 10, 130 A. 66 (1925); death by drowning in an abandoned quarry using as a means of ingress and egress a large cable there left and also using "a dangerous, defective and unsafe raft or float" there found on the waters, *State v. Longeley,* 161 Md. 563, 158 A. 6 (1932); death as the result of the caving-in of earth of a tunnel left as the result of operations of a steam shovel where children had played with the express authority of the property owner and had enlarged the tunnel, *State v. Machen,* 164 Md. 579, 165 A. 695 (1933); injury by the shifting of iron pipes and other iron objects while watching a baseball game, *Brinkmeyer v. Iron & Metal Co.,* 168 Md. 149, 177 A. 171 (1935); drowning of a child allegedly "mentally sub-normal" from a raft moored in

public waters adjacent to defendant's property, *State v. Fidelity Warehouse Co.*, 176 Md. 341, 4 A. 2d 739 (1939); injury by a fall through a trap door behind the counter in a store where a child had wandered, *Pellicot v. Keene*, 181 Md. 135, 28 A. 2d 826 (1942); injury sustained by an eight-year-old child when playing in a partially constructed house, falling through an open hole in the floor, *Carroll v. Spencer, supra;* injury by a flare (presumably a kerosene flare pot) placed in a public street near an excavation, *Conrad v. City of Takoma Park, supra;* injury by a falling radiator in an apartment house recreation room, *Levine v. Miller*, 218 Md. 74, 145 A. 2d 418 (1958); injury when a child's clothing caught fire from a flare pot around construction work in a public street, *Ritter v. Baltimore City*, 219 Md. 477, 150 A. 2d 260 (1959); injury to a three-year-old child by falling into a concrete access well upon landlord's property, *Barnes v. Housing Authority*, 231 Md. 147, 189 A. 2d 100 (1963); injury when a child wandered onto his neighbor's unfenced premises and was burned by a trash fire, *Herring v. Christensen, supra;* and injury when a child stuck his foot on the rear wheel of a bus and reached up for the window pane to show a friend a "trick" and the bus crushed his pelvis and leg, *Mondshour v. Moore*, 256 Md. 617, 261 A. 2d 482 (1970). Of a similar category but involving an adult is the case of *Stansfield v. C. & P. Tel. Co.*, 123 Md. 120, 91 A. 149 (1914), where a man was electrocuted when he climbed spikes previously inserted in a telephone pole for the purpose of rescuing a kitten which was a favorite pet of his infant children, and where liability was denied on the ground that he was a trespasser.

In this case the dangerous substance or "explosive" was a .22 caliber blank cartridge. We see in it nothing more inherently dangerous than that of other situations in which liability has been denied. In *Grube v. Mayor, etc., of Balto., supra,* Chief Judge Boyd said for the Court:

"Children should receive all reasonable protec-

tion from the courts, but however much such an injury as this boy sustained is to be regretted, it does not justify mulcting innocent people or corporations in damages for injuries sustained by a boy over ten years of age who had no right to do what he did do, and who did it in a way that shows he knew he had no right to do it. Parents are sometimes so situated that they can not have such supervision over the movements of their children as may be desirable, but they can not turn them loose and then make other people pay for injuries they bring on themselves, when they are old enough to take care of themselves." *Id.* at 361.

It is our duty to apply what we understand to be the applicable law to the facts before us. It is not our duty to create the law. That is the responsibility of the General Assembly. In the nearly 77 years since *Benson v. Baltimore Traction Co., supra,* was decided, the General Assembly has met many times. There have been many cases since 1893 applying *Benson.* The General Assembly has not seen fit to change the law. If we were to depart from the holding of our predecessors in *Benson* and from the holdings in the long line of cases since then, we would be placing a burden retroactively upon the landowner. As was said in *Herring v. Christensen, supra*:

"To adopt appellants' position would eliminate the consistency and stability in this Court's rulings which are necessary for our citizens to know their respective rights and obligations." *Id.* at 242.

We have sympathy for the boy and his parents because of the injury sustained, but sympathy cannot be a basis for departure from the established legal doctrines of this State. Judge Powers was entirely correct in sustaining the demurrer.

*Judgment affirmed; appellants*
*to pay the costs.*