## OSTERMAN, Adm'r of the Estate of Lawrence Bruce Osterman etc. *v.* PETERS ET AL.

[No. 194, September Term, 1970.]

*Decided January 6, 1971.*

314

The cause was argued before HAMMOND, C. J., and McWILLIAMS, FINAN, SINGLEY and DIGGES, JJ.

*Carl P. Fogel,* with whom were *Samuel H. Suls* and *Fogel & Suls* on the brief, for appellant.

*William J. Rowan, III,* with whom were *Craig S. Rice* and *Heeney, McAuliffe & McAuliffe* on the brief, for appellees.

SINGLEY, J., delivered the opinion of the Court.

This case is the aftermath of the tragic death of Lawrence Bruce Osterman, a four and a half year old boy, who was drowned when he fell into the swimming pool at a neighbor's vacant house while attempting, with a friend, to retrieve a ball. The boy's father, as administrator of his son's estate, and in his own right as parent, brought suit for damages in the Circuit Court for Montgomery County against Mr. and Mrs. Barry J. Peters, the owners of the property upon which the pool was located. At the end of the entire case, the Peters' motion for a directed verdict was granted and judgment was entered in their favor for costs, from which Dr. Osterman has appealed.

In *Hensley v. Henkels & McCoy, Inc.,* 258 Md. 397, 265 A. 2d 897 (1970), decided seven months ago, in *Mondshour v. Moore,* 256 Md. 617, 261 A. 2d 482 (1970) and in *Hicks v. Hitaffer,* 256 Md. 659, 261 A. 2d 769 (1970), both decided less than a year ago and in *Herring v. Christensen,* 252 Md. 240, 249 A. 2d 718 (1969), decided less than two years ago, we had occasion to reiterate the Maryland rule that the owner of land owes no duty to a trespasser or licensee, even one of tender years, except to abstain from willful or wanton misconduct or entrapment, since trespassers or bare licensees, including trespassing children, take the premises as they find them. Judge Smith, who wrote the Court's opinion in *Hicks, supra,* collected and categorized our prior decisions ex-

tending over a period of 75 years involving injuries to trespassing children, 256 Md. at 669-70.

Dr. Osterman, doubtless aware that Maryland is one of only seven states which reject the doctrine of attractive nuisance without qualification, Prosser, *Law of Torts* § 59, at 373, n. 44 (3d ed. 1964), argues that there are four reasons why this case should be taken from under the rule of our prior decisions and should have gone to the jury on the issue of negligence.

First, he relies on the age of the child, who was four and a half. However, in both *Herring v. Christensen, supra,* 252 Md. 240 and *Barnes v. Housing Authority of Baltimore City,* 231 Md. 147, 189 A. 2d 100 (1963), we declined to make an exception for a three year old child, and our predecessors were unwilling to except a mentally subnormal boy of 11 years of age in *State v. Fidelity Warehouse Co.,* 176 Md. 341, 4 A. 2d 739 (1939).

Next, the appellant argues that the child came on the Peters' property for the sole purpose of retrieving a ball, and not to play or swim in the pool. We view this argument as inapposite, since it is reminiscent of the concept of allurement, once thought to be essential to recovery in attractive nuisance cases, but now largely discredited in states which accept the attractive nuisance doctrine, *McGettigan v. National Bank of Washington,* 320 F. 2d 703 (C.A. D.C. 1963); Prosser, *supra,* § 59 at 374, and particularly the cases collected in notes 46, 48 and 50. Compare, however, *State v. Longeley,* 161 Md. 563, 569, 158 A. 6 (1932) which found demurrable a declaration which failed to allege that the hazard was in sight of any place where the plaintiff's decedent could be without trespassing.

There was testimony that the Peters had vacated their house on 9 May, three days before the accident, leaving the pool filled with water for the convenience of the new occupants, who planned to move in on 2 June. This, the appellant argues, was "almost criminal indifference" to the rights of the Peters' neighbors. Assuming for purposes of argument that it was an act of indifference, this

is not the sort of willful or wanton misconduct or entrapment identified in our prior decisions. In *Hensley, supra,* 258 Md. 397, 412, we held that a contracting firm which left unguarded a rope dangling between transmission towers, within reach of a 10 year old boy who was injured when swinging on the rope, created "no covert change or entrapment" and "no hidden danger or secret pitfall." It seems to us that the filled swimming pool may well have been less of a hazard than the dangling rope.

Finally, the appellant points out that Montgomery County Code (1965) § 105-2 requires that private pools be fenced or surrounded with impenetrable planting, and that gates be equipped with self-closing and self-latching devices. The Peters' pool was fenced, but there was testimony that there were apertures about twelve inches high in the fence and that the gate was kept closed by placing a stone in front of it. The boys had pushed the stone aside to gain access to the pool itself. The Peters' violation of this statute, the appellant says, is evidence of negligence. And so it may be, assuming that there was a violation, *McLhinney v. Lansdell Corp. of Maryland,* 254 Md. 7, 14-15, 254 A. 2d 177 (1969); *Aravanis v. Eisenberg,* 237 Md. 242, 259, 206 A. 2d 148 (1965); *Gosnell v. Baltimore & O. R.R. Co.,* 189 Md. 677, 687, 57 A. 2d 322 (1948). The difficulty with the appellant's contention is that this precise point was made in *State v. Longeley, supra,* 161 Md. 563, where it was alleged that a 12 year old boy had drowned in an abandoned quarry which the owners had failed to inclose with a six foot fence, as required by a Baltimore City ordinance. In rejecting this contention, our predecessors said:

> "The ordinance in this case was passed for the benefit of the public. Any violation of it subjects the owner of a quarry to a fine. But, before an individual can hold such owner liable for an injury alleged to have resulted from such violation, there must be shown a right on the part of the plaintiff, a duty on the part of the defendant

with respect to that right, and a breach of that duty by the defendant whereby the plaintiff has suffered injury. *Maenner v. Carroll, supra* [46 Md. 193 (1877)]. A trespasser can acquire no such right except in case of willful injury. The mere violation of a statute would not give it. The effect of such violation is only to raise a presumption of negligence in favor of one entitled to assert it. See an interesting discussion in 27 *Harvard Law Review*, p. 333." 161 Md. at 569-70.

For these reasons, we conclude that Dr. Osterman could no more take his case from under the Maryland rule than could the plaintiff in *Hensley v. Henkels & McCoy, Inc., supra*, 258 Md. 397, who attempted to do so by alleging that the contractor knew that the area where the accident occurred was customarily traversed by children.

What Chief Judge McSherry, speaking for the Court, said in *Demuth v. The Old Town Bank of Baltimore*, 85 Md. 315, 37 A. 266 (1897), which we referred to in *Mondshour v. Moore, supra*, 256 Md. 623-24, is equally appropriate to the distressing situation which this case presents:

"This is a case of exceedingly great hardship, and we have diligently, but in vain, sought for some tenable ground upon which the appellants could be relieved from the loss that an affirmance of the decree appealed from will necessarily subject them to. But hard cases, it has often been said, almost always make bad law; and hence it is, in the end, far better that the established rules of law should be strictly applied, even though in particular instances serious loss may be thereby inflicted on some individuals, than that by subtle distinctions invented and resorted to solely to escape such consequences, long settled and firmly fixed doctrines should be shaken, questioned, confused or doubted.

318

*Lovejoy v. Irelan,* 17 Md. 527. It is often difficult to resist the influence which a palpable hardship is calculated to exert; but a rigid adherence to fundamental principles at all times and a stern insensibility to the results which an unvarying enforcement of those principles may occasionally entail, are the surest, if not the only, means by which stability and certainty in the administration of the law may be secured. It is for the Legislature by appropriate enactments and not for the Courts by metaphysical refinements to provide a remedy against the happening of hardships which may result from the consistent application of established legal principles." 85 Md. at 319-20.

*Judgment affirmed, costs to be paid by appellant.*