## ALLYN M. FITZGERALD ET AL. *v.* MONTGOMERY COUNTY BOARD OF EDUCATION

[No. 954, September Term, 1974.]

*Decided May 1, 1975.*

The cause was argued before ORTH, C. J., and THOMPSON and MOYLAN, JJ.

*D. Warren Donohue,* with whom were *Edith M. Gelfand* and *Trimm, Donohue, McDanald, Willis & McGuckian* on the brief, for appellants.

*Craig S. Rice,* with whom were *McInerney, Layne, McCormick, Sullivan & Rice* on the brief, for appellee.

ORTH, C. J., delivered the opinion of the Court.

## STATEMENT OF THE CASE

An action in tort was instituted in the Circuit Court for Montgomery County by Allyn M. Fitzgerald, a minor, by her father and next friend, Thomas S. Fitzgerald, and Thomas S. Fitzgerald, individually (appellants), against the Montgomery County Board of Education (appellee) claiming damages for personal injuries to the minor and expenses incurred by the father due to appellee's negligence. Appellee filed a general issue plea [1] and answers to interrogatories propounded by appellants. Interrogatories propounded by appellee were not answered. Depositions of appellants, James H. Stubbings, a student, and Thomas S. Fitzgerald, Jr., Allyn's brother, called for examination by appellee, and the deposition of Conley Jones, maintenance supervisor of the Montgomery County Public Schools, called for examination by appellants, were filed. Appellee moved for summary judgment and submitted a memorandum of points and authorities in support thereof and an affidavit by Jones. Appellants filed a memorandum in opposition to the motion. The motion was granted upon hearing and on 22 November 1974 a judgment was entered in favor of appellee for costs. Appellants noted a timely appeal.

---

1. Damages claimed were $200,000 by Allyn and $50,000 by her father. The defense of partial sovereign immunity was not raised by appellee. See Maryland Rule 323 b. By ch. 548, Acts 1971, as amended, such defense may be raised by a board of education to any amount in excess of the limit of comprehensive liability insurance carried by it or in excess of $100,000 in the case of self-insurance. Code, Art. 77, § 56 B. By ch. 792, Acts 1974, it may not be raised in any claim of less than $100,000. For the law prior to 1971, see Weisner v. Board of Education, 237 Md. 391; Weddle v. Board of School Commissioners, 94 Md. 334.

## ISSUE FOR DECISION

The issue before us is the propriety of the grant of the motion for summary judgment. We find that the motion was properly granted and affirm the judgment.

## SUMMARY JUDGMENT

In an action, a party asserting a claim or a party against whom a claim is asserted may move for a summary judgment in his favor as to all or any part of the claim on the ground that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law. Maryland Rule 610 a 1. The judgment shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law. Rule 610 d 1. "The function of the summary judgment procedure is not to try the case or decide the issues of fact raised; it is merely to determine whether or not an issue of fact is to be tried and if there is none, to cause judgment to be rendered accordingly." *Salisbury Beauty Schools v. State Board*, 268 Md. 32, 40. Here it is agreed that a real dispute as to material facts did not exist, so that the issue is a legal one. When there is no genuine dispute as to a material fact, the critical question for the trial court is what the ruling of law should be upon those undisputed facts. *Brewer v. Mele*, 267 Md. 437, 441. "In reviewing the granting of a summary judgment itself, we are concerned with whether the trial judge was legally correct." *Id.*

## THE UNDISPUTED FACTS

Allyn M. Fitzgerald was 6 years of age. On 15 June 1972, her father took her, her mother, her brother, age 15 years, and Stubbings, a friend of the brother, also 15 years of age, to the parking lot of Magruder High School, owned and maintained by appellee. They arrived between 6:15 and 6:30 p.m., long after school hours. The purpose of the trip was to enable the brother and his friend to ride a go-cart on the lot.

There was an electric light pole on the lot, mounted on a concrete pillar about two and a half feet high. Allyn stood on this pillar. The metal cover had been removed from an opening in the pole, and protruding therefrom were three wires carrying 227 volts of electrical current. Allyn's legs came in contact with these live wires and she received an electrical shock. Her father found her on the ground unconscious and applied mouth-to-mouth resuscitation until she regained consciousness. Her legs were burned and she was taken to the hospital. No warning had been given by appellee to appellants with respect to the exposed wires. Although Stubbings stated in his deposition he observed the exposed wires two weeks before, when he was riding a go-cart on the lot, appellee had no actual knowledge that they were exposed. Nor did appellee know that appellants were on the parking lot, it had not given them or those who accompanied them permission to use the lot for go-cart riding. None of those involved attended the school nor were they engaged in school activities when the accident occurred.

## THE LAW

Determination of the propriety of the grant of the motion for summary judgment turns on the standard of care owed to a bare licensee by the owner of real property. Appellants concede that Allyn was a bare licensee,[2] but it is immaterial in the frame of reference of our appellate review whether she was such a licensee or a trespasser, for the standard of care is the same as to each.

It was early established in this jurisdiction, consistently followed, and recently affirmed that a bare licensee or a trespasser, even one of tender years, takes the property as

---

2. A person may be upon another's property as an invitee, a licensee, or a trespasser. An invitee is one invited or permitted to enter or remain on another's property for purposes connected with or related to the owner's business. A licensee is one privileged by virtue of proper consent to enter for his own purpose or convenience onto another's property. There are two types of licensees, a bare licensee and a licensee by invitation, or social guest. A trespasser is one who intentionally and without consent or privilege enters another's property. See Bramble v. Thompson, 264 Md. 518, 521-522, cited in Kight v. Bowman, 25 Md. App. 225.

he finds it and is owed no duty by the owner except that he may not be wilfully or wantonly injured or entrapped by the owner once his presence is known. See, for example, *Bramble v. Thompson, supra,* at 521; *Osterman v. Peters,* 260 Md. 313, 314; *Hensley v. Henkels & McCoy, Inc.,* 258 Md. 397, 400; *Hicks v. Hitaffer,* 256 Md. 659, 666; *Herring v. Christensen,* 252 Md. 240, 241; *Mondshour v. Moore,* 256 Md. 617, 619; *Carroll v. Spencer,* 204 Md. 387, 394. In *Hicks,* Smith, J. collected and categorized prior opinions of the Court of Appeals involving the rule over a period of 75 years. Since *Mergenthaler v. Kirby,* 79 Md. 182, decided in 1894, the Court has uniformly rejected any exception to it.[3]

The standard of care in this jurisdiction owed by an owner of real property to a bare licensee or trespasser is essentially what is known as the Massachusetts rule, under which the owner's sole duty is to abstain from intentional injury. In *Carroll v. Spencer, supra,* at 393, the Court of Appeals observed that it was made clear in *Jackson v. Pennsylvania R.R.,* 176 Md. 1 and *Duff v. United States,* 171 F. 2d 846 (4th Cir. 1949) that Maryland continues to follow the substance of the Massachusetts rule. The Court said in *Carroll,* at 393-394:

> "In the *Duff* case, Judge Soper said for the Court (at page 850 of 171 F. 2d): 'Generally speaking, the owner of land in Maryland owes no duty with respect to the condition of his land to a trespasser, or even to a licensee, whose presence upon the land is known to him, except to abstain from wilful or wanton misconduct. *Benson v. Baltimore. Traction Co.,* 77 Md. 535, 26 A. 973, 20 L. R. A. 714, 39 Am. St. Rep. 436. The owner owes no duty to the trespasser or licensee to keep the premises safe or

---

**3.** In Osterman v. Peters, *supra,* the Court of Appeals made no exception for a child of four and one-half years. In both Herring v. Christensen, *supra,* and Barnes v. Housing Authority of Baltimore City, 231 Md. 147, it declined to make an exception for a three year old child. In State v. Fidelity Warehouse Co., 176 Md. 341, it was unwilling to except a mentally subnormal boy of 11 years of age.

Maryland rejects the doctrine of attractive nuisance without qualification. Osterman v. Peters, *supra,* at 315.

to anticipate his presence and warn him, and the trespasser or licensee acquires no right of recovery except in the case of wilful injury. *Gordon Sleeprite Corp. v. Waters*, 165 Md. 354, 168 A. 846; *Pellicot v. Keene*, 181 Md. 135, 28 A. 2d 826; *Steinwedel v. Hilbert*, 149 Md. 121, 131 A. 44.' "

Appellants recognize the rule followed in Maryland but suggest that it has been modified. They urge that the owner "must warn a licensee of hidden dangers which he knows of or ought reasonably to have known of." They seek support in Restatement (Second) of Torts § 342 (1965) in *Myszkiewicz v. Filling Stations*, 168 Md. 642, in M. L. E., Negligence § 35, and in *Hensley v. Henkels & McCoy, Inc., supra.*

Restatement (Second) of Torts, Title B, "Liability of Possessors of Land to Trespassers", §§ 333-339; Title C, "General Liability of Possessors of Land to Licensees and Invitees", §§ 340-341; and Title D, "Special Liability of Possessors of Land to Licensees", § 342, contain the essence of what has been called the Michigan rule and includes the attractive nuisance doctrine. Generally, it requires that the owner of land owes the duty to a licensee on the premises to exercise ordinary care to avoid injury to the licensee who the owner knows or by exercise of ordinary care should know is in a position of peril; the fact that the presence of the licensee or trespasser is known, requires the owner to exercise ordinary care as to him. This was expressly repudiated in *Jackson v. Pennsylvania R.R., supra*, at 11, the Court noting that the Restatement "imposes a greater degree of care upon the owner than is enforced by the decisions of this Court." Appellants point specifically to § 342 of the Restatement concerning dangerous conditions known to the owner. But the standard of care it imposes is simply not the law of this State with respect to bare licensees and trespassers.

*Duff v. United States, supra,* at 850, suggests that *Myszkiewicz v. Filling Stations, supra,* qualified the Maryland rule to the extent that where the owner has acquiesced in the use of the premises by a licensee and has

created a new and abnormal condition which increases the danger beyond that which the licensee has reason to regard as naturally attaching to his habitual user, the owner must give notice of the change, or as stated in other cases, the owner must not entrap the licensee or change the premises so as to create new dangers not apparent without giving warning. The language in *Myszkiewicz* apparently stemmed from a quotation in *State v. Machen*, 164 Md. 579, 583, from Burdick *Law of Torts* 548 (4th Ed.). The careful and thorough analysis in *Hensley v. Henkels & McCoy, Inc. supra*, effectively lays to rest any suggestion that the Maryland rule is qualified. The Court in *Hensley* found it apparent that neither the statement from Burdick nor the statements from the various Maryland cases were authority for the suggested type of exception to the Massachusetts rule. "Careful reading of all of those cases makes it quite plain to us that what was meant was there could be no entrapment, concealment or presentation of deceptive appearance, 'something like fraud', by a licensor without liability." 258 Md. at 411. It is manifest that in the case *sub judice* there was no entrapment, concealment or presentation of a deceptive appearance "something like fraud", by appellee.

We are not persuaded by M. L. E., Negligence § 35 that there is an exception to the Maryland rule as suggested. It relies on *Jones v. City of Aberdeen*, 138 F. Supp. 727 (D. Md. 1956), *aff'd sub nom, Jones v. U. S.*, 241 F. 2d 26 (4th Cir. 1957) and *Myszkiewicz*, both discussed in *Hensley*. The short of it is that the statement of the Court of Appeals in *Herring v. Christensen, supra*, at 241, "Since 1894 in *Mergenthaler v. Kirby*, 79 Md. 182, 28 A. 1065, we have uniformly rejected any exception to the rule that trespassers and bare licensees take the premises as they find them", is as valid today as when it was made. In *Weisner v. Board of Education, supra*, the Court declared, at 395, that the rule regarding sovereign immunity of school boards enunciated in *Weddle v. Board of School Commissioners, supra*, was "too firmly established and has been too long unchanged by the Legislature in the face of repeated reminders of its role in the matter in the

opinions of the Courts . . . to be changed judicially, assuming that it should be changed at all. If there is to be a change, we think the Legislature should make it." The Court in *Herring*, at 242, found this statement equally applicable to the rule with respect to care owed bare licensees and trespassers. It explained, *id.*, "To adopt appellants' position would eliminate the consistency and stability in this Court's rulings which are necessary for our citizens to know their respective rights and obligations." The Court did not swerve from this position as recently as *Osterman v. Peters, supra*, in which it quoted at length at 318 the words of McSherry, C. J. in *Demuth v. The Old Town Bank of Baltimore*, 85 Md. 315, 319-320, referred to in *Mondshour v. Moore, supra*, 256 Md. 623-624. Chief Judge McSherry, after discussing the pitfalls to be overcome in deciding cases involving great hardship, concluded:

> "It is often difficult to resist the influence which a palpable hardship is calculated to exert; but a rigid adherence to fundamental principles at all times and a stern insensibility to the results which an unvarying enforcement of those principles may occasionally entail, are the surest, if not the only, means by which stability and certainty in the administration of the law may be secured. It is for the Legislature by appropriate enactments and not for the Courts by metaphysical refinements to provide a remedy against the happening of hardships which may result from the consistent application of established legal principles."

## DECISION

It is clear that upon application of the Maryland rule to the undisputed facts, the grant of the summary judgment in favor of appellee was proper. Appellants could no more take their case from under the rule in effect in this jurisdiction than could the plaintiff in *Osterman* or in *Hensley* or in the numerous other cases in which the rule has been so consistently applied. "It is our duty to apply what we

understand to be the applicable law to the facts before us. It is not our duty to create the law. That is the responsibility of the General Assembly." *Hicks v. Hitaffer, supra,* at 671.

The judgment of the lower court must be affirmed, and we affirm it.

> *Judgment affirmed; costs to be paid by appellants.*